Edward A. JONES, Appellant,

v.

STATE of Alaska, Appellee.

No. 5355.

Court of Appeals of Alaska.

June 4, 1982.

Allan Beiswenger, Asst. Public Defender, Kenai, James D. Oswald, Asst. Public Defender, and Brian Shortell, Public Defender, Anchorage, for appellant.

Rhonda F. Butterfield, Asst. Atty. Gen., Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, C. J., and COATS and SINGLETON, JJ.

OPINION

BRYNER, Chief Judge.

Edward A. Jones was convicted, following a jury trial in Kenai, Alaska, of one count of selling cocaine in violation of AS 17.10.010; he was sentenced on April 24, 1980. Thereafter, Jones filed this appeal, in which he contends that certain evidence obtained in violation of the Alaska constitutional prohibition against unreasonable searches and seizures [1] was improperly admitted against him, both at his trial and sentencing.

A brief review of the factual and procedural background of this case will assist in consideration of the issues raised. Jones was one of six defendants separately indicted for offenses involving sale of drugs to one Harvey Knutsen, a confidential informant who worked with the South Central Area Narcotics Team, a specialized drug investigation unit based in the Kenai/Soldotna area. In each of the six cases, drug buys made by Knutsen were electronically monitored and recorded by police. Monitoring and recording of all drug transactions was authorized by warrants obtained by the investigating officers. A consolidated evidentiary hearing on motions to suppress the tape recordings as to all six defendants was heard by Judge James A. Hanson, who denied suppression as to at least four of the defendants, including Jones.

The cocaine sale involved in this case took place at Jones' home in Soldotna on August 8, 1979, by prearrangement between the police informant, Knutsen, and Jones. Electronic monitoring and recording of the transaction by officers working with Knutsen complied with the conditions specified by the search warrant that had been issued. The warrant, however, omitted particular description of the premises where the drug transaction was to be monitored; it stated only that the conversation between Jones and Knutsen concerning sale of cocaine was to take place "in or near the City of Soldot-

---

1. Alaska Const., art. 1, § 14.

Jones also contends that the evidence was seized in violation of his right to privacy under

Alaska Const., art. 1, § 22.

na, Alaska." The warrant also specifically provided that service upon Jones of an inventory, as required by Alaska Criminal Rule 37(b), would be abrogated pursuant to Alaska Criminal Rule 53,[2] which authorizes relaxation of criminal rules.

Jones was not immediately arrested following his sale of cocaine to Knutsen on August 8, 1979. Two days after the transaction, investigating officers obtained a second warrant, this time to search Jones' house for additional cocaine, paraphernalia and other items of evidence. The search resulted in seizure of some cocaine residue and a variety of items commonly associated with the cocaine trade. Based upon the residue found in the search, Jones was ultimately charged with a separate count of cocaine possession. This count was dismissed, however, after Jones obtained an order suppressing evidence seized in the search of his residence due to material omissions made by the officers seeking the warrant.

On September 6, 1979, yet another search was conducted by one of the investigating officers. This search occurred in the course of an arrest of Jones by the officer; the search was purportedly based on a charge that Jones was a fugitive from justice on a criminal charge pending against him in California. Apparently, after the officer arrested Jones, who had been in his truck outside his residence, Jones managed to escape. Jones was ultimately apprehended on September 18, 1979. Thereafter, in an attempt to secure Jones' truck, the officer discovered a tinfoil packet in the ashtray, opened it and found cocaine.

No separate charges were brought as a result of this search. At Jones' sentencing, however, Judge James Hanson expressly indicated that he would take into account both the previously suppressed evidence that was seized in the August 10 search of Jones' house and the evidence found during the September 6 search of Jones' truck.

Judge Hanson's ruling was based on his conclusion that illegally obtained evidence could be considered for sentencing purposes, regardless of its admissibility at trial. The judge declined to rule on the legality of the September 6 search of Jones' truck.

Jones initially challenges the failure of the August 8, 1979, search warrant—which authorized electronic monitoring by officers of Knutsen's cocaine transaction with Jones—to set out with particularity the place where the monitored conversation was to occur.

The August 8 warrant authorized officers to equip Knutsen with electronic equipment that would pick up and transmit the conversation during Jones' sale of cocaine to Knutsen; officers were to monitor and record the transmission from Knutsen. The warrant provided, specifically, that officers were authorized to use this method of surveillance in order to receive and record

> certain statements made, in a person to person conversation namely: That Edward A. Jones will negotiate the sale and/or transfer of approximately One Quarter Ounce (¼ Oz.) of Cocaine to N–170 [Knutsen's code name at the time] on August 8, 1979 between the Hours of 3:00 PM and 10:00 PM in or near the City of Soldotna, Alaska.

Jones and Knutsen both knew the sale of cocaine was to take place at Jones' house and that a previous sale by a co-defendant had occurred at the same location; however, the warrant did not describe Jones' house with particularity as the location where monitoring would occur. Similarly, no information describing Jones' house as the location of the anticipated drug sale was included in the affidavit submitted in support of the August 8 warrant. Jones now argues that these omissions must be deemed to invalidate the warrant, requiring suppression of the tape recording of the transaction between Jones and Knutsen.

**2.** Alaska R.Crim.P. 53 provides:

*Relaxation of Rules.*

These rules are designed to facilitate business and advance justice. They may be relaxed or dispensed with by the court in any case where it shall be manifest to the court that a strict adherence to them will work injustice.

A proper understanding of the nature and purpose of the warrant issued in this case can be obtained only by reference to our supreme court's landmark decision in *State v. Glass*, 583 P.2d 872 (Alaska 1978). In *Glass*, the court held that electronic monitoring by a police informant of a drug transaction, when transmitted to and recorded by police officers, constituted an impermissible invasion of the defendant's privacy interest and violated both the prohibition against warrantless searches and seizures contained in article I, section 14, of the Alaska Constitution and the right to privacy guaranteed by article I, section 22, of the Alaska Constitution. The court in *Glass* was unmoved by the state's argument that the monitoring had occurred with the consent of the police informant, a participant in the conversation.[3] Accordingly, the court concluded that, even in instances involving participant electronic monitoring similar to that involved in the present case, evidence gathered by such monitoring would be inadmissible in the absence of a search warrant "based on probable cause to believe that criminal activity will be discovered ...."[4] *Id.* at 881 (footnote omitted).

In the present case, Jones specifically insists that the Alaska Supreme Court's ruling in *Glass* carried with it the implication that a warrant for participant monitoring must, as a matter of constitutional mandate, describe with particularity the place where the conversation to be monitored will occur. For his argument, Jones relies on discussion contained in federal cases that deal with the particularity requirement of the fourth amendment in the context of

nonconsensual electronic surveillance,[5] as opposed to participant monitoring situations such as those involved in the present case and in *Glass*. We believe that Jones' argument ignores the fundamental distinction between wholly nonconsensual electronic surveillance or wiretapping and cases involving the *Glass* situation of participant monitoring. Jones' position simply misperceives the essential scope and function of the warrant requirement adopted by the court in *Glass*.

Although the court in *Glass* extended the warrant requirement to participant monitoring—electronic surveillance accomplished with the consent of one of the participants to a conversation—its decision did not challenge the well-established police practice of using informants, operating without warrants and under a variety of pretenses, to arrange for and carry out undercover drug purchases. To the contrary, the court repeatedly made it clear that use of undercover informants to purchase drugs does not require the issuance of a warrant, and that the conversation of an individual with an undercover informant in the course of a drug transaction could properly be testified to by the informant, despite the absence of a warrant.

The line drawn by the supreme court in *Glass* fell squarely between traditional use of undercover informants to testify concerning warrantless participation in drug transactions and the independent use of evidence derived from electronic monitoring devices used by participant informants in such cases. Thus, the court stated:

---

3. Thus, the court in *Glass* stated:

 In the case at bar, the state argues that there is no difference between talking to a friend who repeats what is told in confidence and talking to one with a transmitter or recorder. All one need do to refute that statement is to ask the question of oneself; would it make a substantial difference to the speaker to assume the risk, not only that one's confidence will be betrayed by oral recollections, but also the risk that one's remarks will be secretly recorded or broadcast?

 *State v. Glass*, 583 P.2d at 877.

4. The supreme court further indicated the possibility that, under appropriate circumstances, the need for a warrant might be obviated by exigent circumstances. However, the court declined to rule on this possibility in the absence of a specific case raising the issue. *State v. Glass*, 583 P.2d at 881. In this case, the state has argued exclusively that the August 8 warrant issued pursuant to *Glass* was valid; the state has not raised an alternative argument based on exigent circumstances to monitor Jones' conversation.

5. *See, e.g., Berger v. New York*, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967).

In the context of law enforcement, it is true that the use of informers is a highly necessary tool in fighting crime. In combating illegal sale of drugs, as involved in this case, because of the clandestine nature of the transactions, testimony by police informers or others trusted by the criminal is one of the few methods by which convictions may be obtained. Society is not willing to accept as reasonable the subjective expectation of one engaged in a conversation that it will not be repeated. For generations, while not condoning the gossip or false friend, society has countenanced the repetition of private conversations. The use of surreptitious electronic devices to broadcast or record conversations, however, is a development of recent vintage. We conclude that the expectation that one's conversations will not be secretly recorded or broadcast should be recognized as reasonable.

*State v. Glass*, 583 P.2d at 880 (footnotes omitted). At another point, the court similarly reasoned:

One takes the risk that his friend may repeat what has been said. One shouldn't be required to take the additional risk of an entirely different character—that his conversation is being surreptitiously transcribed or broadcast.

*Id.* at 878.

It is thus clear that the holding in *Glass* was narrowly limited in its application to only that evidence derived from electronic surveillance itself. The case did not call into question the validity of a defendant's consent in dealing with a police informant who had obtained his confidence by ruse or misrepresentation. The distinction between the legitimacy of warrantless use of undercover informants and their testimony, on the one hand, and use of information derived from warrantless participant monitoring, on the other hand, is reflected in the supreme court's ultimate disposition in *Glass*, which approved a superior court order suppressing the tape recording of a warrantless undercover transaction, but permitting the use in evidence of testimony by the informant concerning the drug sale.

■ Consideration of the scope of the court's holding in *Glass* leads to the conclusion that the warrant requirement articulated in *Glass* was a narrow one. Participant monitoring of the type involved in this case and in *Glass* requires a warrant for the limited purpose of *seizing* the conversation of the defendant. Such situations do not call for the issuance of a warrant authorizing police search of or entry into any premises; nor does a *Glass* warrant authorize access to any statement of the defendant that would not already be accessible to the involved police informant by virtue of his undercover activities. In short, a *Glass* warrant is not a warrant authorizing the search of any place or person. The issuance of a *Glass* warrant presupposes that the informant who is the monitoring participant in the defendant's conversation will already have access, by virtue of the defendant's own consent and entirely independently of the warrant, both to the location where the illegal transaction is to occur and to the defendant's spoken words. The type of warrant necessary in such cases may thus most accurately be described as a warrant only for the seizure of conversation from a person.[6]

---

**6.** The limited scope of authorization inherent in a warrant issued for participant monitoring of a conversation serves to distinguish such warrants from the warrants considered in federal and state authorities relied upon by Jones, which involve nonconsensual electronic surveillance. A search warrant issued in an entirely nonconsensual situation necessarily involves far more than authorization to seize, by electronic means, a conversation to which access is already available by consent of the speaker. In nonconsensual monitoring cases, the warrant serves to authorize not only the electronic monitoring and/or recording, but also access—whether by actual physical entry, as in a bugging case, or by electronic means, as in a wiretap—to the person whose conversation is to be monitored. In this sense, such warrants entail both the entry or search of a specific location and the seizure of conversation from an individual. It is on this basis that federal decisions and statutes requiring that location be specified with particularity can be explained. *See, e.g., Berger v. New York*, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967); 18 U.S.C. § 2518(4)(b). It is, perhaps, also on this basis that the stan-

■ When viewed in this light, the necessity of including, either in an affidavit in support of a *Glass* warrant or on the face of the warrant itself, a particularized description of the premises or location to be searched simply cannot be justified. The basic reason supporting the particularity requirement is to prevent generalized or overbroad searches or seizures. *Bell v. State*, 482 P.2d 854, 858 (Alaska 1971). A pragmatic approach to the interpretation of the required level of particularity is called for in evaluating the sufficiency of a warrant. *United States v. Tortorello*, 480 F.2d 764, 780 (2d Cir. 1973), *cert. denied*, 414 U.S. 866, 94 S.Ct. 63, 38 L.Ed.2d 86 (1973); *State v. Farha*, 218 Kan. 394, 544 P.2d 341, 354 (1975), *cert. denied*, 426 U.S. 949, 96 S.Ct. 3170, 49 L.Ed.2d 1186 (1976); W. LaFave, *Search and Seizure* § 4.5 (1978). Given the fact that warrants for participant monitoring issued pursuant to the requirements of *Glass* are limited in scope to authorizing the seizure of conversation from a person or persons, and because such warrants do not purport to authorize the entry or search of any premises, or even the access by an informant to a person's conversation, it is difficult to see how any substantial increment in the protection of a person's privacy would be accomplished by requiring location of premises to be spelled out with particularity. In the *Glass* context, the key to accomplishing the goal of preventing generalized or overbroad searches would appear to lie in requiring that the warrant state with reasonable specificity the time and subject matter of the anticipated conversation, as well as the person or persons with whom the conversation will occur.

■ We therefore hold that the Alaska Supreme Court's ruling in *State v. Glass* does not require that warrants issued for participant monitoring of conversations contain particularized descriptions of the location in which the monitoring will occur. We think this conclusion is supported by the express language of *Glass* itself. In discussing the level of specificity required to support the issuance of a warrant for participant monitoring, the court stated:

> Conversations, of course, may occur in a variety of places and on a variety of subjects. What is required is a description of the person and subject which is reasonable under the circumstances, and we shall leave further refinement of requirements to future cases.

*State v. Glass*, 583 P.2d at 881 n.36. Had the court in *Glass* deemed a particularized description of the location in which a conversation would occur to be necessary, it could easily have said so. Jones' request that we adopt a strict rule requiring a particularized description of location, if granted, would constitute a significant extension of the requirements spelled out by the *Glass* court. Such an extension could hardly be deemed to constitute a "further refinement" of the requirements for a warrant stated in *Glass*.

■ We have examined the language of the warrant issued in this case as well as the facts stated in the affidavit submitted in support of the warrant. Based on this review, we are satisfied that both the affidavit and warrant described with reasona-

dards embodied in federal wire-tapping statutes have been held applicable only to purely non-consensual electronic surveillance, and inapplicable to participant monitoring. *See, e.g., United States v. White*, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971), *reh. denied*, 402 U.S. 990, 91 S.Ct. 1643, 29 L.Ed.2d 156 (1971).

Jones further suggests that the need for particularity as to location is especially great when the defendant's home is the contemplated scene of an illegal drug transaction which will be monitored. This argument is similarly flawed in light of the limited function of a *Glass* warrant. In *Glass*, the court expressly declined to base its holding on the location involved in

participant monitoring, concluding that warrantless participant monitoring was offensive in any location. *State v. Glass*, 583 P.2d at 881 n.35. The court's reasoning is reflective of the fact that the additional invasion of privacy resulting from participant monitoring is attributable to the potential use that might be made of monitored or recorded conversations, as compared with unmonitored conversations. In a case of participant monitoring, just as in a case of an undercover informant working without a monitoring device, the invasion of the defendant's privacy interests in his physical surroundings is essentially identical.

ble specificity the time and subject matter of the conversation to be monitored, as well as the person who would be the nonconsenting party to the monitored conversation. We therefore conclude that the August 8 warrant and its supporting affidavit satisfy the requirement of particularity.[7]

■ Jones separately argues that he was entitled to suppression of the recorded conversation seized pursuant to the warrant of August 8, 1979, because he was not served with a copy of an inventory of the property seized at the time the warrant was executed. Alaska Criminal Rule 37(b) provides:

> *Execution and Return With Inventory.* The warrant shall be executed and returned within 10 days after its date. The officer taking property under the warrant
>
> (1) shall give to the person from whom or from whose premises the property was taken a copy of the warrant, a copy of the supporting affidavits, and receipt for the property taken, or
>
> (2) shall leave the copies and the receipt at the place from which the property was taken.

The wording of Criminal Rule 37(b) does not comfortably fit the circumstances of a participant monitoring warrant issued pursuant to *Glass*, since, strictly speaking, no "property" is taken. Nevertheless, because the concerns of Rule 37(b) appear to be based upon the need to serve notice upon a person that his privacy interests have been violated by the service of a warrant and the need to assure proper accountability on the part of officers serving the warrant to the issuing magistrate, we conclude that re-quirements of Criminal Rule 37(b) cannot simply be disregarded in cases such as the present one. *Cf. Berger v. New York*, 388 U.S. at 60, 87 S.Ct. at 1884, 18 L.Ed.2d at 1053 (holding invalid a New York wiretapping statute that entirely eliminated any requirement that persons subjected to electronic surveillance be notified of the surveillance).

■ On the other hand, we recognize that in most cases involving the service of a warrant issued in accordance with *State v. Glass*, compelling reasons will exist to postpone service of an inventory, or notice that a warrant has been executed, upon the subject of the warrant. In many cases, police informants making monitored purchases of drugs will be involved in a number of other, ongoing transactions, and immediate disclosure of their identity would severely jeopardize their safety and impair investigatory efforts in other cases. Moreover, in many cases, the interests of effective law enforcement might require that substantial follow-up investigation occur after the monitored purchase of drugs by an informant. As in the present case, such follow-up investigation could include requests for issuance of additional warrants for the search of the defendant's home. A strict requirement that an inventory be served upon the defendant at the time his conversation is monitored would obviously render potential follow-up investigation ineffective. We therefore conclude that, under the provisions of Alaska Criminal Rule 53, which allow for relaxation of criminal rules, service of an inventory upon an individual who has been the subject of a warrant for electronic surveillance issued pursuant to *State*

7. Our disposition finding the August 8, 1979, warrant valid makes it unnecessary to dispose of Jones' second argument, which is apparently based on the assumption that the warrant was invalid. In his second argument, Jones maintains that Knutsen lacked actual consent to monitor the drug sale. Since we have concluded that the warrant was valid, the question of whether Jones actually consented to electronic monitoring by Knutsen is irrelevant.

To the extent that Jones' argument in this regard might be construed to assert that, by virtue of Knutsen's use of a false name and other deceptive techniques, Jones cannot be deemed to have intelligently consented to Knutsen's entry of his house and to his presence during the drug transaction, the argument is foreclosed by the supreme court's decision in *Glass*. As already discussed, the plain language of the *Glass* holding makes it clear that it does not extend the warrant requirement to traditional use of informants and deception by enforcement officers as a technique to make undercover drug purchases. *See Nix v. State*, 621 P.2d 1347 (Alaska 1981).

*v. Glass* may be postponed for a reasonable period of time. In the absence of a specific rule, the determination of what constitutes a reasonable time for postponement of service of an inventory should be left to a case-by-case determination.[8] That determination must be governed by the exigencies established in the individual case in the affidavit accompanying the state's application for a warrant. *See, e.g., United States v. Eastman*, 465 F.2d 1057 (3d Cir. 1972).[9]

■ In this case, the affidavit submitted in support of the warrant of August 8, 1979, contains sufficient facts to justify a relaxation of Criminal Rule 37(b) and to order postponement of service of the inventory upon the defendant. The issuing court in this case, however, went beyond a postponement of the service requirement contained in Criminal Rule 37(b). The face of the warrant issued indicates that the judge in this case dispensed altogether with the requirement of serving an inventory on Jones.[10] We do not believe that such

wholesale abrogation of the inventory requirement provided for in Criminal Rule 37(b) can be justified, and there is ample case authority under federal law to support this conclusion. *See, e.g., United States v. Donovan*, 429 U.S. 413, 97 S.Ct. 658, 50 L.Ed.2d 652 (1977).[11]

■ Nevertheless we believe that the error in failure to provide for any service of notice of execution of a warrant or an inventory upon Jones was harmless. The warrant issued here was executed on August 8, 1979. Jones' home was searched pursuant to a second warrant two days later, thereby, at the very least, alerting him to the fact that he was the focus of a police investigation. He was actually arrested and charged on August 21, less than two weeks following the sale. By September 25, Jones had filed, through counsel, a discovery motion that included a request for all taped conversations. Finally, the record in the case affirmatively establishes that, at the very latest, Jones was aware of the fact

8. We believe that, in the absence of a specific rule, determination of how long to postpone service of an inventory in cases involving participant monitoring should be made pragmatically, on a case-by-case basis, and that the period should not be inflexible. We think that a useful point of reference for judges and magistrates in establishing reasonableness of delay may be found in the provisions of 18 U.S.C.A. § 2518(8)(d), which govern nonconsensual electronic eavesdropping and allow a reasonable period of delay, not to exceed 90 days, to be granted. This initial 90-day period is subject to extension upon an *ex parte* showing of good cause.

9. The affidavit submitted in support of the August 8 warrant established that revealing Knutsen's identity might jeopardize investigation of other cases in progress. The relevant portion of the affidavit stated:

> Your affiant further believes that it would be desirable, and in the interest of future police investigations, not to reveal the identity of N–170, by informing Edward A. Jones of any electronic surveillance or recording that may take place in the event that this application for Search Warrant by electronic surveillance and/or recording is granted.

Though somewhat conclusory, we think that this statement, when viewed in context, must be deemed adequate. On the basis of the statement, the court entered the following language on the face of the August 8 warrant:

> [P]ursuant to Criminal Rule 53, without leaving the person uttering such statements any documents, prepare a written inventory of the nature of the statements seized and return this warrant and bring the evidence of the seized statements before me within ten (10) days of this date and await further order of this court.

10. It is significant in this case that, in issuing the August 8 warrant, the court did not dispense with rule 37(b)'s requirement that a return of the seized property be made to the court. *See* footnote 9, *supra*. In enforcing the requirement of a return to the court, the important goal of assuring proper accounting for and disposition of the evidence seized was maintained by the court.

11. *Cf. State v. Dowdy*, 222 Kan. 118, 563 P.2d 425, 429 (1977) (a state statute must provide for eventual service of inventory and return of property seized in order to be acceptable under federal law governing nonconsensual wiretapping).

The cited cases would also seemingly support the proposition that an intentional and unsupported disregard for statutory provisions relating to notice and return of inventory in nonconsensual eavesdropping cases will require suppression without the need for a showing of prejudice to the defendant. Such circumstances clearly do not exist in the case at bar.

that he had been subjected to electronic surveillance by October 4, when he filed his motion to suppress. Thus, through the course of indictment and pretrial discovery, Jones was given information equivalent to that which he would have been entitled to under Alaska Criminal Rule 37(b) within less than two months of the date upon which the electronic surveillance occurred.[12] We find no prejudice to Jones under these circumstances and hold that the error in failing to make provision for eventual service of an inventory pursuant to Alaska Criminal Rule 37(b) was harmless.[13]

As his final issue, Jones contends that the superior court committed error when, at the time of sentencing, it decided to consider evidence that was unlawfully seized during the search of his house on August 10, as well as evidence that was seized following search of his truck on September 6, 1979. As previously indicated, Judge Hanson expressed the view that illegally obtained evidence was admissible for the purposes of sentencing, regardless of the circumstances surrounding the manner of its seizure. Accordingly, the judge dispensed with any determination of the legality of the September 6 search of Jones' truck.

 The issue raised by Jones was decided by this court in *Elson v. State*, 633 P.2d 292 (Alaska App.1981), a case decided after the briefs in this case were submitted. In *Elson* we held that the admissibility of illegally obtained evidence must be determined by the facts of each case, but that such evidence will generally be admissible. We stated:

> [W]here the illegally seized evidence is reliable, where the police conduct involved in obtaining the evidence does not shock the conscience of the court, and where it is clear that the evidence was not obtained for purposes of influencing the sentencing judge, illegally seized evidence may be considered in fashioning a sentence.

*Id.* at 300 (footnote omitted). Because, under this standard, the question of admissibility of illegally seized evidence depends upon the determination of the factual issues in each individual case, and because the ruling of the sentencing court in this case foreclosed Jones from any opportunity to obtain a determination of the factual issues relevant to the question of admissibility, it will be necessary to remand this case for the limited purpose of affording Jones the opportunity of a hearing to determine the admissibility at sentencing of the evidence seized in the searches conducted by police on August 10 and September 6, 1979. This

12. We note that the period between electronic surveillance in this case and the latest possible time that Jones might have been notified of the surveillance is well within the 90-day period provided for under 18 U.S.C.A. § 2518(8)(d). Hence, given the fact that the affidavit in support of the August 8 warrant stated grounds for postponing notice to Jones, it would be difficult to conclude that no showing of prejudice should be required or that prejudice should be presumed from the length of delay.

13. We emphasize that it is a matter of particular concern that provision for eventual service of an inventory and notice of electronic surveillance be made in all cases involving warrants issued for participant monitoring pursuant to *State v. Glass*. It is safe to say that persons who are ultimately charged will, under Alaska's broad rules of criminal discovery, inevitably be notified of surveillance pursuant to a warrant authorizing participant monitoring. However, the fundamental concern of rule 37(b), as well as analogous provisions of federal law governing nonconsensual electronic monitoring, is that *all* subjects of electronic surveillance warrants be notified, whether they are ultimately charged or not.

Unless adequate provision is made, individuals who are subjected to participant monitoring pursuant to a *Glass* warrant will remain ignorant of that fact and will be afforded no opportunity to avail themselves of appropriate remedies to challenge the propriety of the procedures used against them. *See, e.g., Berger v. New York*, 388 U.S. at 60, 87 S.Ct. at 1884, 18 L.Ed.2d at 1053; J. Cederbaums, Wiretapping and Electronic Eavesdropping: The Law and Its Implications (1969) at 24. The legitimate need to protect the identity of police informants and to preserve the integrity of ongoing criminal investigations can be accommodated by a flexible approach toward postponement of notice under Criminal Rule 37(b), where appropriate. These considerations must not, however, be permitted to serve as an impetus for growth of a general policy of secrecy concerning electronic surveillance by law enforcement agencies.

determination should be made in accordance with our decision in *Elson*.[14] Pending a hearing on remand, we think that the sentence originally imposed should not be disturbed. In the event that the superior court determines that evidence was improperly considered in the course of Jones' original sentencing hearing, it should vacate the sentence and conduct a new sentencing hearing.

This case is REMANDED for a hearing consistent with the views expressed herein. In all other respects, the judgment is AFFIRMED.

**D. R. C., Appellant,**

v.

**14.** We would call to the attention of the parties that the Alaska Supreme Court granted a petition for hearing filed by the appellant in *Elson v. State.* Briefing on the merits of our holding in *Elson* has been submitted to the supreme court, and argument has recently been held. We leave it to the parties to determine, by mutual agreement, whether to postpone a hearing on the admissibility of the disputed evidence in this case until the supreme court has rendered a decision on the petition for hearing in *Elson.*