Frank STEFFENSEN, Appellant,

v.

STATE of Alaska, Appellee.

STATE of Alaska, Appellant,

v.

Frank STEFFENSEN, Appellee.

Nos. A–4471, A–4492 to A–4494, A–4931.

Court of Appeals of Alaska.

July 28, 1995.

Marcia E. Holland, Asst. Public Defender, Fairbanks, John B. Salemi, Public Defender, Anchorage, and Frank Steffensen, pro se, Fairbanks, for appellant in A–4471/4492/4493/4494 and for appellee in A–4931.

William H. Hawley, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellee in A–4471/4492/4493/4494 and for appellant in A–4931.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

MANNHEIMER, Judge.

This case involves five related appeals: four appeals brought by Steffensen from a criminal conviction and three probation revocations, and one appeal brought by the State from the superior court's decision to grant Steffensen post-conviction relief. As explained in more detail below, we reverse the superior court's decision in the post-conviction relief action and remand for further proceedings. Accordingly, we hold Steffensen's four appeals in abeyance pending the superior court's decision on remand.

### Explanation of the Five Appeals

In 1988, Frank Steffensen was convicted of three felony offenses: third-degree misconduct involving a controlled substance (possessing cocaine with intent to distribute), AS 11.71.030(a)(1), in case number 4FA–88–596 Cr; fourth-degree misconduct involving a controlled substance (possession of cocaine), AS 11.71.040(a)(3)(A), in case number 4FA–88–1207 Cr; and felony failure to appear, AS 12.30.060(1), in case number 4FA–88–1390 Cr. Steffensen served a jail sentence and was released on probation.

On September 26, 1991, Steffensen was indicted on three counts of third-degree misconduct involving a controlled substance

(three sales of cocaine) in case number 4FA–91–2898 Cr. These cocaine sales were alleged to have occurred six months before, in March of 1991. Following a jury trial, Steffensen was convicted of two of the three counts. Based on these convictions, the superior court revoked Steffensen's probation from the three prior felonies. Steffensen appealed his new conviction as well as the probation revocations from his three prior convictions. These four appeals (Nos. A–4471, A–4492, A–4493, and A–4494) were consolidated for decision.

While Steffensen's appeal was pending, he filed a petition for post-conviction relief (case number 4FA–92–1980 Civ). The superior court granted Steffensen's petition, suppressed some of the evidence against Steffensen (tape recordings of the cocaine sales), and ordered that Steffensen receive a new trial in case number 4FA–91–2898 Cr. The State appealed the superior court's decision in the post-conviction relief action, and that appeal (No. A–4931) was consolidated with Steffensen's four appeals.

*Factual Background*

In March 1991, the Bureau of Drug Enforcement (a joint operation of the Fairbanks police and the Alaska State Troopers) set up a series of controlled cocaine purchases between Steffensen and a police informant, Reltha C. Miller. The first of these transactions (March 5) was not recorded, but the second and third transactions (March 11 and 18) were recorded pursuant to *Glass* warrants. *See State v. Glass*, 583 P.2d 872 (Alaska 1978).

When the *Glass* warrants were issued, the superior court authorized the State to wait 90 days before informing Steffensen of the execution of the warrants. However, the State allowed this deadline to pass without either informing Steffensen of the warrants or asking the superior court to extend the deadline.

Shortly after these alleged drug sales, Steffensen was arrested for probation violations unrelated to any drug offense. (Steffensen was taken into custody for changing his residence without permission of his probation officer). As noted above, Steffensen was not indicted for these alleged sales until September 26. Only after Steffensen was indicted did he learn that he had been the subject of electronic monitoring.

When Steffensen discovered that the State had failed to honor the superior court's 90–day deadline for notifying him of the electronic monitoring, Steffensen filed a pre-trial motion asking the court to suppress the tapes. Steffensen argued that the police had intentionally failed to notify him of the electronic surveillance, and he also argued that the State's failure to promptly notify him had prejudiced his defense. Steffensen asserted that his defense would be premised mainly on attacking Miller's (the police informant's) credibility. Steffensen suggested that Miller had set him up—that Miller had engaged Steffensen in conversation but that the cocaine Miller turned over to the police had come from another source. Steffensen asserted that Miller had ready access to drugs, that Miller was obtaining drugs without the Bureau of Drug Enforcement's knowledge, and that, during the electronic surveillance, Miller had turned off the tape recorder and had walked in and out of buildings where he (Miller) was not under police surveillance—suggesting that Miller could have obtained the cocaine from someone other than Steffensen. Steffensen argued that, if he had known earlier that the police had executed the *Glass* warrants, he would have been able to locate witnesses who could impeach Miller.

Following an evidentiary hearing, Superior Court Judge Jay Hodges found that the State had not intentionally concealed the electronic surveillance from Steffensen; rather, the police had negligently failed to seek an extension of the 90–day deadline.[1] Additionally, Judge Hodges found that, at least on the record before him, Steffensen had failed to establish any prejudice stemming from the delay in notification. However, Judge Hodges kept the door open if Steffensen could later show prejudice to the defense:

---

1. More precisely, Judge Hodges appears to have found that the police acted with gross negligence. He declared that, while the State's conduct was not "intentional" and was not "reckless", it was "more than negligence".

THE COURT: [T]he court does not find that, at this point in the case, based on the state of the evidence, there is any prejudice shown in connection with preparation for trial. That is without prejudice to [Steffensen's ability to] renew [the motion] at the time of the conclusion of the State's case, depending on what the State's case shows and what showing the defense can make with respect to prejudice.

At Steffensen's ensuing trial, the State introduced the challenged tape recordings. Steffensen was ultimately convicted of the second and third sales (the two that had been taped); the jury was unable to reach a verdict on the first sale (the one that had not been taped).

Steffensen filed a motion for new trial, relying on new evidence that he had been prejudiced by the State's failure to give him timely notification of the electronic surveillance. In particular, Steffensen presented the testimony of Douglas Felix. Felix testified that another man, Michael Stickman, had told him that Miller had set up Steffensen because Steffensen would not provide Miller with cocaine. Stickman was unavailable to testify regarding this conversation because he had committed suicide on October 24, 1991 (four weeks after Steffensen was indicted). Steffensen argued that, if he had received timely notice of the *Glass* warrants, he would have found Stickman and induced Stickman to testify concerning Miller's motives for fabricating a case against Steffensen.

Judge Hodges agreed that Steffensen had been prejudiced by the delay. The judge found that, had Steffensen been indicted in March and his trial held within 120 days, Steffensen would likely have located Stickman before Stickman committed suicide, and Stickman would have been a defense witness. However, Judge Hodges found that the error was harmless because of the other evidence Steffensen introduced at trial to attack Miller's credibility and motives.

On October 26, 1992, Steffensen filed a petition for post-conviction relief. In his petition, Steffensen asserted that he had found another new witness, Marla Jimmie, who would have corroborated the assertion that

Steffensen was set up, and whose testimony would have appreciably affected the jury's verdict. Steffensen further asserted that, because of the State's delay in notifying him of the electronic surveillance, (1) he had been unable to locate Jimmie until well after his trial and (2) her memory of the events litigated was now significantly faded.

Jimmie and Steffensen had been friends for approximately eight years. Steffensen submitted an affidavit stating that he had been in contact with Jimmie for several months following his arrest in March of 1991 but that he had lost contact with Jimmie before his indictment in September. Steffensen asserted that, after he became aware that he faced drug charges, he and his attorney tried to contact Jimmie but they were unable to find her until about four months after Steffensen's trial.

At an ensuing evidentiary hearing, Jimmie corroborated Steffensen's claim that she lost contact with him about six months after his arrest. Jimmie had moved to Anchorage in April or May of 1991, had stayed there for about one month, and then had begun moving back and forth between Anchorage and Fairbanks. She could not remember when Steffensen first re-established contact with her, but it was sometime shortly before he filed his petition for post-conviction relief.

Jimmie testified that, in March of 1991, she was present on three or four occasions when Steffensen and Miller were at the Savoy Bar together. She could no longer identify the exact dates of these occurrences, but she stated that she was with Steffensen "almost every day" during March 1991 and that she had stayed at his residence on a few occasions. During this time period, Jimmie had no indication that Steffensen was selling cocaine, and she never witnessed any drug transactions between Steffensen and Miller. However, Jimmie did witness what she thought were drug transactions between Miller and a man who wore "either an army jacket or a plaid shirt".

According to Jimmie, Miller had approached her on several occasions, asking her to provide him with cocaine or to get Steffensen to provide him with cocaine. Mil-

ler asked Jimmie why Steffensen would not make a deal with him. He seemed disappointed by Steffensen's refusal to sell him cocaine, but he was nevertheless able to obtain cocaine from other sources, and he offered some to Jimmie. Miller told Jimmie "that he would get to [Steffensen], one way or another, or something like that."

Judge Hodges granted Steffensen's petition for post-conviction relief. The judge reiterated his earlier finding that the State's failure to provide timely notice had not been intentional (although he found it to be extremely negligent). This time, however, Judge Hodges found that Steffensen had shown actual prejudice:

> THE COURT: At the time of trial ... there was some conflicting testimony concerning what the various officers had observed; there was conflicting testimony concerning the character of [Miller]. [I]t was critical as to what had actually transpired. [T]estimony has been presented that at or about the time of these transactions, Ms. Jimmie, who was a friend of ... Steffensen, spent a considerable amount of time with ... Steffensen in the downtown area of Fairbanks. Her testimony is essentially [that] she was present during most, if not all, of the occasions when ... Steffensen was present in and about the area where these transactions occurred. The testimony is, further, that because of the passage of time, the specific times, dates, and places ... cannot [be remembered].... [B]ecause of the delay in not complying with the search warrant [notification] requirements, [Steffensen] was precluded from obtaining the evidence from ... Jimmie as to the specifics of the time, dates, and places where she would have been with him [and] she may well have been with him [during these] alleged transactions. Under the *Brannen* case [*Brannen v. State*, 798 P.2d 337, 339 (Alaska App.1990) ], ... if the defense can show prejudice, the remedy is suppression of the seized evidence and a new trial.

Because Judge Hodges concluded that Steffensen had made a sufficient showing of prejudice, he ordered a new trial with the tape-recorded evidence suppressed.

In *Gallagher v. State*, 651 P.2d 1185, 1186–87 (Alaska App.1982), this court held that a violation of the notification requirement of Alaska Criminal Rule 37(b) should result in suppression of the fruits of a validly issued *Glass* warrant only when the violation is intentional or when the delay in notification results in actual prejudice to the accused. (This holding was reaffirmed in *Brannen,* 798 P.2d at 339.) In the present case, Judge Hodges concluded that the violation of the 90–day notice requirement did prejudice Steffensen's defense. To review Judge Hodges's ruling, we must examine the meaning of "prejudice" as this term is used in *Gallagher* and *Brannen.*

The holding in *Gallagher* was explicitly modeled after federal cases construing Federal Criminal Rule 41, the counterpart to Alaska Criminal Rule 37. These federal cases hold that improper execution of a search warrant will require suppression of the resulting evidence only if the defendant was actually prejudiced or the government's non-compliance was deliberate. *Gallagher,* 651 P.2d at 1186–87 & 1187 n. 3. Although *Gallagher* cites only one supporting case by name (*United States v. Marx,* 635 F.2d 436, 441 (5th Cir.1981)), numerous other cases support this rule. Among the more recent decisions are *United States v. Gerber,* 994 F.2d 1556, 1559–1561 (11th Cir.1993), *United States v. Ritter,* 752 F.2d 435, 440–41 (9th Cir.1985), *United States v. $22,287.00 in United States Currency,* 709 F.2d 442, 447–48 (6th Cir.1983), and *United States v. Stefanson,* 648 F.2d 1231, 1235 (9th Cir.1981).

All of these cases agree that, before evidence will be suppressed because of the government's non-compliance with a procedural rule governing the execution of search warrants, a defendant must demonstrate that he or she was prejudiced by the government's non-compliance.[2] Moreover, all of these

---

**2.** We speak here only of non-compliance with the procedural requirements imposed by court rule. As the United States Supreme Court has stated, speaking of the federal wiretap statute:

> Nothing in the structure of the Act or [its] legislative history suggests that incriminating conversations [become] "unlawfully intercepted" [simply because] parties to those conversa-

cases employ the same formula to define "prejudice" when examining violations of the procedural rules:

> [V]iolations of [Federal Criminal] Rule 41 alone should not lead to exclusion [of evidence] unless (1) there was "prejudice" in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule.

*$22,287.00 in United States Currency,* 709 F.2d at 448.

This formulation of the test traces its origin to Judge Friendly's opinion in *United States v. Burke,* 517 F.2d 377, 386–87 (2nd Cir.1975). Charles A. Wright, *Federal Practice and Procedure (Criminal)* (1982), § 665.1 & § 673. While recent court decisions do not always attribute this test to *Burke,* the wording of the test (in particular, Judge Friendly's idiosyncratic use of "abrasive") has remained remarkably unchanged over the intervening twenty years.

Using this definition of "prejudice", it is difficult to see how prejudice would ever arise from the government's failure to serve after-search notification upon the person whose privacy interest has been affected. That is, if the government's only violation of law was its failure to give notice after the search was completed, it would be close to impossible to show that, absent this violation, the search would not have occurred or would not have been so intrusive. Perhaps in tacit recognition of this problem, the federal courts have applied an altered definition of "prejudice" when dealing with situations in which the government has failed to give notice of electronic monitoring.

The federal cases suggest three rationales for requiring the government to notify people that their conversations have been surreptitiously monitored or recorded. Two of these

rationales deal primarily with protection of civil interests. First, notice is required so that the subject of the electronic monitoring "can seek appropriate civil redress ... if he feels that his privacy has been unlawfully invaded". *United States v. Donovan,* 429 U.S. 413, 438, 97 S.Ct. 658, 673, 50 L.Ed.2d 652 (1977) (quoting the United States Senate report on the federal wiretap statute, 18 U.S.C. § 2518).[3] Second, notice of the electronic monitoring reduces the opportunity for unlawful use of the recorded conversation(s). *See, e.g., United States v. Lawson,* 545 F.2d 557, 564 (7th Cir.1975).

The third rationale, and the one most pertinent in the context of criminal litigation, is that notice of the electronic monitoring allows defendants in criminal cases to be informed of the evidence obtained through monitoring, to investigate the circumstances underlying the monitoring, and to seek suppression of the resulting evidence when appropriate. However, even a tardy notice will satisfy these purposes as long as the notice arrives in time for the defendant to file suppression motions and prepare to meet the evidence at trial.

For instance, in *United States v. Donovan,* two of the defendants argued that they were prejudiced because the government failed to include their names in the list of people who had been monitored. Because the two defendants' names were not in the government's list, the federal district court did not send them notification of the wiretap, and the two defendants did not learn that their conversations had been electronically monitored until after they were indicted. The Supreme Court held, however, that the defendants had not been prejudiced:

> [Defendants] Merlo and Lauer were not prejudiced by their failure to receive postintercept notice under ... the District Court's inventory orders. As noted earlier, the Government made available to all

tions do not receive ... notice as a result of the Government's failure to inform the District Court of their identities. At the time inventory notice was served ..., the intercept had been completed and the conversations had been "seized" under a valid intercept order.
*United States v. Donovan,* 429 U.S. 413, 438, 97 S.Ct. 658, 673, 50 L.Ed.2d 652 (1977). Of

course, if the government fails to comply with a requirement imposed by the Fourth Amendment (such as establishing probable cause to conduct the search), the legal analysis is different.

**3.** Senate Report No. 1097, 90th Congress, 2nd session, at 105 (1968), U.S.Code, Congressional & Administrative News, p. 2194.

defendants the intercept orders, applications, and related papers.... And in response to pretrial discovery motions, the Government produced transcripts of the intercepted conversations.

*Donovan,* 429 U.S. at 439 n. 26, 97 S.Ct. at 673–74 n. 26.

*Donovan,* then, apparently stands for the proposition that late notification of electronic monitoring will "prejudice" a defendant only when the lateness of the notice hampers the defendant's ability to file pre-trial suppression motions or gain pre-trial knowledge of the monitored conversations. As the First Circuit declared in *United States v. Harrigan,* 557 F.2d 879, 884 (1st Cir.1977), "[W]e doubt that many defendants will be able to make a showing of actual prejudice [from the government's failure to file a timely notice of electronic monitoring]. The [Supreme] Court's opinion in *Donovan* indicates that the [subsequent] service of a § 2518(9) notice will often preclude any such claim."

This court's prior decisions in *Gallagher* and *Brannen* suggest the same definition of prejudice. *Gallagher* involved a claim that the State's failure to give timely notice had prejudiced the defendant's ability to challenge the admissibility of the monitored conversations. This court found that the defendant had been apprised of the pertinent information in time to fully raise suppression issues, and thus the defendant had not been prejudiced by the tardiness of the notice. *Gallagher,* 651 P.2d at 1187.

In *Brannen,* the defendant claimed a different sort of prejudice. Brannen was convicted of sexually abusing his stepdaughter. He argued on appeal that, because the State failed to give him timely notice that the police were monitoring his conversations, he continued to hold conversations with his stepdaughter and thus further incriminated himself. This court rejected Brannen's suggested prejudice:

> [T]he prejudice that we adverted to in *Gallagher* is that which occurs when delay [in notification] places a defendant at a disadvantage in challenging the evidence obtained through surreptitious monitoring of a conversation. *See [United States v.] Orozco,* 630 F.Supp. [1418,] 1536 [ (S.D.Cal.

1986) ]. Nothing in *Gallagher* suggested that prejudice can be established by a mere claim that, by being tipped off to the existence of an investigation, the defendant would have been able to take evasive action to thwart future investigative efforts.

*Brannen,* 798 P.2d at 339.

■ In Steffensen's case, the superior court applied a definition of "prejudice" that is similar to the type of prejudice asserted and rejected in *Brannen*—in the sense that Judge Hodges found prejudice in the fact that Steffensen had not received early warning that the State had targeted him in a criminal investigation. However, Steffensen's claim of prejudice differs in an important respect from the claim raised in *Brannen.* The defendant in *Brannen* did not have a protected right to "take evasive action to thwart [ongoing] investigative efforts". *Id.* at 339. Steffensen, on the other hand, did have a right to reasonable notice of the State's charges so that he could investigate the case and prepare his defense. This due process right is recognized in the case law dealing with pre-accusation delay. *See,* for example, *United States v. Marion,* 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971); *State v. Mouser,* 806 P.2d 330 (Alaska App.1991).

■ However, for a defendant to prevail on a claim of unreasonable pre-accusation delay, the defendant must establish both that he or she was actually prejudiced by the delay *and* that the government had no valid reason for its delay in filing the criminal charge against the defendant. *Mouser,* 806 P.2d at 336. In the present case, Judge Hodges found that Steffensen was actually prejudiced by the State's delay in filing the drug charges (the event that led Steffensen to comprehend the potential importance of Marla Jimmie's testimony). However, because Steffensen's claim was litigated as a *Glass* warrant violation instead of an assertion of pre-accusation delay, Judge Hodges did not examine the second prong of the pre-accusation delay test: he did not require Steffensen to prove that the State had no valid reason for its delay in notifying Steffen-

sen that he was the subject of criminal charges.

■ If Steffensen had framed his claim in terms of pre-accusation delay, the State would have been entitled to introduce evidence explaining its delay in filing charges against Steffensen. The question thus presents itself: Does it make any difference that Steffensen's claim rests on the State's failure to give timely notice of electronic monitoring under a *Glass* warrant?

We hold that the answer to this question is "no": the State is still entitled to introduce evidence explaining the delay. We reach this answer because, as this court noted in *Brannen*, the requirement that people be notified of electronic monitoring is not meant to serve as a target warning to those under investigation.

The law has long required law enforcement officers who execute search warrants to contemporaneously notify the person in possession of the property that was seized. Alaska Criminal Rule 37(b), provides:

> The officer taking property under the warrant (1) shall give to the person from whom or from whose premises the property was taken a copy of the warrant, a copy of the supporting affidavits, and [a] receipt for the property taken, or (2) shall leave the copies and the receipt at the place from which the property was taken.

Notice that property has been seized pursuant to a search warrant is intended to protect the possessor's rights in relation to the seized property. The notice enables the person to protect possessory interests in the property; it also helps assure that the government will not put the property to improper or unfair use.

On the other hand, the notice is not intended to sound an alarm as to the possibility of future prosecution. This is obvious from the wording of Criminal Rule 37(b). Rule 37(b) directs law officers to leave notice with the person who was in possession of the property when it was seized. But the possessor of the property will not always be the owner of the property, and he or she will often not be the person under investigation.

■ We thus conclude that the notification requirement of Rule 37(b) is aimed at protecting the person who has suffered a trespass to land and/or chattels. The possessor of the property may, in fact, be the person under investigation or may be a friend of the person under investigation. In such circumstances, when the police leave the notice required by Criminal Rule 37(b), the effect may be to deliver an early "target warning" to the person under investigation. But this is not the intended function of Rule 37(b).

This point is exemplified by this court's decision in *Jones v. State*, 646 P.2d 243 (Alaska App.1982), a case in which this court was called upon to clarify the relationship between *Glass* warrants and the notice requirement of Criminal Rule 37(b). The defendant in *Jones* claimed that evidence of his conversations (which had been monitored pursuant to a *Glass* warrant) should be suppressed because the police failed to give him contemporaneous notification after they executed the *Glass* warrant. But this court recognized that, when the police seek a warrant to engage in electronic monitoring of a person's conversations, that person is generally under investigation—and thus the notice requirement of Rule 37(b) would almost always serve as an early warning of the government's investigative efforts. For that very reason (that is, to prevent Rule 37(b) from functioning as a target warning), this court held that the contemporary notice requirement of Rule 37(b) should normally be relaxed for *Glass* warrants:

> [W]e recognize that in most cases involving [*Glass* warrants], compelling reasons will exist to postpone service of an inventory, or notice that a warrant has been executed, upon the subject of the warrant.... [I]mmediate disclosure of [police informants'] identity would severely jeopardize their safety and impair investigatory efforts in other cases. Moreover, in many cases, the interests of effective law en-

forcement might require that substantial follow-up investigation occur after the monitored [conversation].... A strict requirement that an inventory be served upon the defendant at the time his conversation is monitored would obviously render potential follow-up investigation ineffective.

*Jones,* 646 P.2d at 249.

■ After *Jones,* it is clear that the notice requirement of Criminal Rule 37(b), as it relates to *Glass* warrants, is intended "to serve notice upon a person that his [or her] privacy interests have been violated", but it is not intended to notify the targets of a criminal investigation that the government has commenced an inquiry into their activities. *Jones,* 646 P.2d at 249. As this court reiterated in *Brannen,* the fact that the government obtains a warrant to electronically monitor a person's conversations does not give the putative defendant a vested right to receive early notification of the government's investigation.

■ To summarize: In the context of *Glass* warrants, tardy notification of the execution of the warrant "prejudices" a defendant when the lateness of the notice impairs the defendant's ability to challenge the intercepted conversation. However, "prejudice" does not include the delay in the defendant's finding out that he or she is under investigation. *Brannen,* 798 P.2d at 339. This second type of prejudice is directly addressed by the doctrine of pre-accusation delay.

■ Steffensen's claim for post-conviction relief is based on his loss of evidence stemming from the government's delay in notifying him of the planned criminal charges. This claim is cognizable under the rubric of pre-accusation delay. When Steffensen asserted that his ability to defend the drug charges was prejudiced by the government's delay in filing the charges (that is, the government's delay in notifying Steffensen that a defense was necessary), the law of pre-accusation delay required Steffensen to prove two things to obtain relief: (1) that the delay actually prejudiced him (which Judge Hodges has already found to be so), and (2) that the government had no good reason for the delay (which remains to be litigated). While it is true that the government obtained a *Glass* warrant to monitor Steffensen's conversations and then failed to comply with the notice requirement of Criminal Rule 37(b), this fact does not, and should not, alter the elements of Steffensen's proof—because the notice required by Criminal Rule 37(b) is not intended to serve as a target warning. The fact that the police employed a *Glass* warrant during their investigation provides no basis for supplanting the established law of pre-accusation delay.[4]

We therefore REVERSE the superior court's order granting Steffensen post-conviction relief, and we REMAND this case to the superior court so that Steffensen and the State can litigate the reason (or lack of reason) for the State's delay in charging Steffensen with the drug offenses. Pending resolution of the post-conviction relief litigation, we stay our consideration of Steffensen's four appeals (his direct appeal from his most recent criminal conviction and his appeals of the three probation revocations). We retain jurisdiction over all five appeals.

4. Steffensen argues forcefully that if the police know that they can violate the *Glass* warrant notification deadline without jeopardizing the prosecution, they will deliberately do so to gain a tactical advantage. However, both the federal cases and this court's prior decisions have explicitly distinguished situations in which the police are shown to have deliberately violated the notification requirement. As explained in the main text, Judge Hodges found that the police had not deliberately violated the 90–day notice requirement set by the superior court in this case.