Michael A. GALLAGHER, Appellant,

v.

STATE of Alaska, Appellee.

No. 5450.

Court of Appeals of Alaska.

Oct. 1, 1982.

D. John McKay, Anchorage, and Robert Merle Cowan, Kenai, for appellant.

Peter A. Michalski and Rhonda F. Butterfield, Asst. Attys. Gen., Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, C. J., COATS and SINGLETON, JJ.

## OPINION *

BRYNER, Chief Judge.

Michael A. Gallagher appeals from his conviction and sentence for the crimes of sale of cocaine and possession of cocaine.[1] We affirm Gallagher's conviction and sentence. We will briefly address each of the numerous issues raised by Gallagher.

Gallagher challenges the validity of a warrant issued on August 7, 1979, authorizing electronic monitoring of the transaction in which Gallagher sold cocaine to a police informant, one Harvey Knutsen; also challenged is the manner in which the warrant was executed. Our recent holding in *Jones v. State*, 646 P.2d 243 (Alaska App. 1982), is dispositive of Gallagher's arguments relat-

ing to the August 7 warrant. We conclude that the August 7 warrant was properly issued and executed.

Gallagher's claim that he was entitled to a preliminary hearing even though he had been indicted is controlled by our ruling in *Pascua v. State*, 633 P.2d 1033 (Alaska App. 1981), in which we rejected a similar claim. We hold that Gallagher was not entitled to a preliminary hearing, on either due process or equal protection grounds.

Gallagher contends that the August 10, 1979, warrant for the search of his residence—which led to seizure of the cocaine resulting in his conviction for possession— was not supported by probable cause. His argument is premised on the claim that the August 7 warrant for electronic monitoring was invalid. Since we have concluded that the August 7 warrant was properly issued and executed, we find that the August 10 warrant was supported by probable cause.[2]

Gallagher also contests the validity of the August 10 warrant for the search of his residence. He argues that police officers engaging in the search failed to leave a copy of the affidavit in support of the warrant at his residence, as required by Alaska R.Crim.P. 37. It is undisputed that the failure to leave a copy of the supporting affidavit at Gallagher's residence was intentional on the part of officers conducting the search, who did not want to risk possible disclosure of the identity of their undercover informant. Officers conducting the search did, however, leave a copy of the warrant itself, together with an inventory of the property seized.

▮▮▮ We are inclined to agree with federal authorities stating that suppression of evidence will be justified as a result of improper execution of a warrant only if the defendant was actually prejudiced or if

---

* Originally filed August 26, 1982, as a memorandum opinion and judgment pursuant to Appellate Rule 214. Publication directed by the court October 1, 1982.

1. Gallagher was charged by indictment with one count of sale and one count of possession of cocaine. Both offenses constituted violations of AS 17.10.010.

2. Our disposition of this issue makes it unnecessary to consider whether probable cause would have existed in the affidavit for the August 10 search warrant if the information seized as a result of the August 7 warrant for electronic surveillance were deleted.

non-compliance was intentional.[3] Here, the superior court determined that Gallagher had not demonstrated legal prejudice as a result of the failure to serve a copy of the supporting affidavit. Having reviewed the appellate record, we conclude that the superior court was not clearly erroneous in making this finding.[4] Thus, the finding must be upheld.

■ While we think that intentional, or bad faith, failure to comply with requirements governing execution of warrants might in some instances justify suppression of the fruits of a search regardless of the lack of prejudice, we believe that the determination whether to apply the suppression sanction should be made on the basis of the particular facts of each case and that a *per se* rule of suppression should not be adopted. Two reasons support this conclusion. First, compliance with the rules governing execution of warrants is essentially ministerial.[5] Thus, even when non-compliance is intentional, it will often have little actual or potential impact on the rights of those affected by the search. Second, suppression of evidence is not the only effective remedy in such cases, since the court's contempt powers can be exercised in appropriate cases.

Considering the facts of the present case, we agree with the superior court's determination that suppression was not warranted. The non-compliance in this case, though misguided, was motivated by concern for protection of the identity of an informant, and not out of a desire to expand the scope of the search beyond that which was authorized; nor was the non-compliance calculated to harass or prejudice Gallagher in some other fashion. In this sense the non-compliance, while intentional, was not undertaken in bad faith. More significantly, a copy of the warrant itself was properly served; it expressly indicated that it was based upon a written affidavit executed before the issuing judge. Given this fact, it is apparent that no effort was made by the officers to conceal the fact that a duly authorized search of the residence had been made. There was, furthermore, no effort to conceal the purpose of the search or the nature and identity of articles seized. Considering the totality of the circumstances, we believe that the superior court was correct in finding that the officers who conducted the search substantially complied with the requirements of Criminal Rule 37 and in refusing to order suppression despite the intentional failure to serve a copy of the affidavit.

■ Gallagher's final attack against the August 10 search warrant is based on the contention that material information was omitted from the affidavit in support of the warrant. Although the officer who executed the affidavit for the August 10 warrant was aware that cocaine had apparently been delivered to an area at the rear of Gallagher's residence on the night of August 7, 1979, and that this delivery was the source of the cocaine sold by Gallagher to Knutsen that night, he failed to include this information in his affidavit. We conclude that this omission was not material.

There is nothing to indicate that either the officer who executed the affidavit or

---

3. *See, e.g., United States v. Marx*, 635 F.2d 436, 441 (5th Cir. 1981).

4. Gallagher claims that the lack of service deprived him of a chance to contact and interview Knutsen before the time of his suppression hearing. Gallagher has not, however, specified what information he could have obtained from Knutsen on or about August 10 that he was not able to obtain in the course of later proceedings. Nor has Gallagher established that Knutsen would have been willing to talk to him in the days immediately following the search of his home. Additionally, there is no assurance that service of the affidavit on Gallagher would have enabled him to determine the identity and location of Knutsen, since the affidavit referred to Knutsen only by his code name, "N–170." Finally, the copy of the search warrant left at Gallagher's residence made it clear that the warrant was based upon a written affidavit sworn to before the court. Thus, Gallagher should have been on notice of the existence of the affidavit. Presumably, a copy of the affidavit would have been available to Gallagher through the superior court in Kenai; nothing in the record would indicate the contrary.

5. *United States v. Marx*, 635 F.2d at 441.

Harvey Knutsen, the police informant who had purchased cocaine from Gallagher, had any specific reason to believe that on the night of August 7 Gallagher had sold Knutsen all of the cocaine that was delivered to his home. In the absence of some affirmative indication that Gallagher retained no cocaine after his sale to Knutsen, we think that the information relating to the delivery of August 7 does not have significant impact on the extent of probable cause contained in the affidavit for the August 10 warrant. Applying the test of *Cruse v. State,* 584 P.2d 1141, 1146 (Alaska 1978), we do not think that the omission of the information concerning delivery of cocaine to Gallagher's house "materially influenced the ... judge to issue a warrant he would have otherwise denied."[6]

■ An additional contention raised on appeal pertains to the trial court's decision to excuse a juror in the middle of trial. We conclude that the neutral position expressed by Gallagher's trial counsel concerning the court's dismissal of the juror falls short of constituting an objection that sufficiently preserved this issue for appeal.[7] In any event, having reviewed the totality of the statements made by the juror in response to questions posed by both the court and counsel, we conclude that the superior court acted well within the bounds of its discretion in excusing the juror and replacing him with an alternate. *Gonzales v. State,* 608 P.2d 23, 25 (Alaska 1980); *see also* Alaska R.Crim.P. 24(c)(3).

■ Gallagher also argues that the trial court improperly refused to allow him to present a witness who was called as an

expert on the use of informants in drug cases for the purpose of impeaching Knutsen's testimony. We note initially that the trial court specifically indicated that it might permit the witness to testify on the subject of potential abuse of electronic monitoring equipment by informants if, after being given a chance to examine the electronic surveillance equipment actually used in the case, the witness could state that it was substantially similar to recording equipment with which the witness was familiar. Despite the court's willingness to entertain a further offer of proof on this subject, none was made. We conclude that Gallagher's failure to follow up with an offer of proof constituted a waiver as to this aspect of the witness' proposed testimony. *Moss v. State,* 620 P.2d 674, 677 (Alaska 1980).

■ As to the balance of the testimony for which Gallagher's expert witness was called, we believe that the trial court's refusal to permit testimony was justified. The decision whether to permit this testimony was one to be made by the trial court in the exercise of its discretion; we cannot reverse absent a showing of abuse. *Handley v. State,* 615 P.2d 627, 630 (Alaska 1980). The offer of proof made on behalf of Gallagher at trial was both vague and confusing as to the proposed testimony. Specifics as to the content of the proposed testimony were, for the most part, omitted. While the trial court was told in general terms of the subjects that the proposed witness would address, the court was told very little about what the witness would actually say with respect to these subjects. What specifics

---

6. We do not mean to imply that we condone omission of this information. Though not of vital importance in this case, the information was obviously of some relevance; it was also specifically known to the officer who executed the affidavit on August 10. We take this occasion to repeat the admonition of the Alaska Supreme Court in *Cruse v. State,* 584 P.2d at 1146 (footnote omitted):

Police and prosecutors owe a duty of candor to the court, particularly in light of the *ex parte* nature of these proceedings, and must not withhold information which may taint the source of probable cause they put forth.

7. The relevant portion of the statement made by Gallagher's trial counsel concerning dismissal of the juror was as follows:

[T]his is totally a discretionary matter with the court and ... the only way that the court would be reversed would be a prejudicial abuse of discretion, and I think that is the standard but I think that the real standard is the court must find before it exercises its discretion, the court must find what has been stated by Mr. Smith is going to be re—just cause for excluding him from this panel and replacing him with an alternate. I'll leave that to the court's decision.

there were, were plainly irrelevant. For example, it was proposed that Gallagher's expert would testify that informants in drug cases never turn in their primary source of drugs. Moreover, there was nothing in the offer of proof to indicate that Gallagher's expert—who clearly had substantial experience with and could testify about informants in drug cases—would be capable of connecting his general observations and experience to Knutsen's specific situation.

Having reviewed the totality of the offer of proof made at trial, we find no abuse of discretion by the court in rejecting the proposed expert testimony on the ground that it would not be relevant. *See, e.g., Moss v. State,* 620 P.2d at 676–77; *White v. State,* 577 P.2d 1056, 1062 (Alaska 1979).

■ The next issue advanced by Gallagher is a claim that the prosecutor withheld a photograph which Gallagher alleges was favorable to his defense; the photograph depicted a blanket hung over the living room window of Gallagher's residence and was taken during the search conducted on August 10, 1979. Gallagher contends that this photograph was crucial because Knutsen, in his testimony at trial, stated that he had seen a shadow, which he took to be a person, pass by outside the window. Knutsen stated that there was nothing over the window to obstruct his view. Thus, it is Gallagher's theory that the photograph would have been vital evidence to impeach Knutsen.

We find no violation by the prosecutor of the duty to disclose. Whatever relevance this evidence might have had became apparent only after Knutsen's testimony on cross-examination. The record is uncontroverted that prior to trial Gallagher's counsel had received police reports specifically stating that the interior of Gallagher's residence had been photographed during the August 10 search; furthermore, the prosecutor alluded to the fact that he possessed photographs of the interior of Gallagher's residence during presentation of the case-in-chief. Despite what we think was clear notice of the existence of this evidence,

Gallagher's counsel made no request to see any photographs in the possession of the state, either before or during trial.

Additionally, we believe that the photograph in question would have been of marginal utility to the defense, at best. As the state correctly notes, the presence of the blanket over the window is not necessarily inconsistent with Knutsen's testimony that he briefly saw a shadow pass by the window. To the extent there is inconsistency, it is important that Knutsen's testimony on this subject was collateral; it was not directly relevant to establish any material issue in the case. The sole relevance of the undisclosed photograph would thus have been to show that Knutsen was incorrect in his observation or dishonest in his testimony concerning a collateral incident. It has long been recognized that the use of extrinsic evidence to impeach a witness on a collateral matter may be disallowed by the court. Hence, we believe that the potential value of this photograph to Gallagher was tenuous.

A secondary argument raised by Gallagher with respect to the undisclosed photograph is that the trial court improperly denied his motion for a new trial; the motion was based on the contention that his discovery of the existence of the photograph following trial constituted new evidence. Given our conclusion that Gallagher's counsel had ample notice prior to trial of the existence of photographs depicting the interior of Gallagher's house, and given our conclusion as to the marginal probative value of this evidence, we conclude that a new trial was properly denied.

■ Gallagher's final attack on the validity of his conviction deals with the introduction into evidence of a portion of the tape recordings of the August 7, 1979, transaction between himself and Knutsen. Gallagher claims that these recordings were inaudible, and therefore inadmissible. The rule is well established that partially audible recordings may be admitted, within the discretion of the trial court, if their probative value outweighs their potential for prejudice and if the omitted portions are

not so substantial as to render the recordings unreliable. *Quick v. State,* 599 P.2d 712, 721 (Alaska 1979); *Hampton v. State,* 569 P.2d 138, 146 (Alaska 1977); *Dana v. State,* 623 P.2d 348, 354 (Alaska App.1981). *See also* Alaska Rule of Evidence 403.

■ We have reviewed the recordings played to the jury and find that they are virtually inaudible, except for isolated bits and snatches of conversation. The trial court found these recordings to be of slight probative value. Although we would be more inclined to conclude that the content of the tapes was not probative, we note that playing the tapes could arguably have been relevant to establish for the jury's satisfaction that an effort to monitor the transaction had in fact been made, but was unsuccessful.

On balance, however, we believe that whatever probative value the recordings may have had was outweighed by the fact that the virtual total inaudibility of the recordings rendered them untrustworthy, thereby leaving it to the jury to speculate as to what was actually said. *Hampton v. State,* 569 P.2d at 146. For this reason, we think it would have been best to exclude this evidence. *Lamar v. State,* 258 Ind. 504, 282 N.E.2d 795, 799–800 (1972); *People v. Mincey,* 64 A.D.2d 615, 406 N.Y.S.2d 526, 527 (1978).

Nevertheless, we find no prejudicial error under the circumstances of this case. While the probative value of the tapes must be deemed extremely low, their almost total lack of content significantly reduced any potential for the jury to speculate as to the meaning of portions of the tape which might have been ambiguous and out of

context. The tapes simply left little for the jury to speculate about. More significantly, despite the fact that Gallagher's trial counsel was apparently aware of the content of the tapes, they were initially played to the jury without objection. Only after admission of the tapes into evidence and after the jury had actually heard them did Gallagher first move to strike this evidence.

■ We believe that the lateness of Gallagher's objection requires us to review the trial court's decision allowing the tapes to remain in evidence in light of the fact the jury was already aware of the tape's content when the decision was made, rather than as an abstract issue of relevance.[8] Given the relatively low potential for prejudice in allowing the challenged tapes to remain in evidence, and given the fact that these tapes had already been admitted and heard by the jury before an objection was first raised, we believe that any error by the trial court in refusing to grant Gallagher's motion to strike was harmless.

In addition to challenging his conviction, Gallagher maintains that the sentence that he received was improperly imposed and too severe.

Judge James Hanson, in his sentencing remarks, commented on his view that deterrence of others in the community was an important consideration in drug cases. The judge went on to state that, while he had doubts about the effectiveness of criminal sentences as a deterrent to others in metropolitan areas such as Anchorage, his experience indicated that in smaller communities such as Kenai, criminal sentencing did in fact play a significant role in deterring potential offenders other than the accused.[9]

---

**8.** We emphasize our belief that the issue of admissibility of evidence such as tape recordings should be determined before the evidence is heard by the jury, and preferably prior to trial. Because the only method by which a trial judge will be capable of evaluating the probative value and potential for prejudice of a partially audible tape recording is by listening to the recording itself, it is imperative that the judge be given the opportunity to review the recording and make a determination as to its admissibility before the jury is exposed to it. Here, we find it doubtful whether an instruc-

tion for the jury to disregard the tapes once the jurors had already heard them would have been of substantial benefit. To the contrary, such an instruction might have engendered speculation by members of the jury as to the contents of the recordings and the reasons for their having been stricken from the record.

**9.** Judge Hanson's sentencing comments in this regard were:
    I may not be able to get anybody to agree with me, but I think that one of the major aspects of sentencing in drug cases is deter-

Based on these remarks, Gallagher contends that he was discriminated against for living in Kenai and given a higher sentence than he would have received in Anchorage. We disagree.

Judge Hanson never indicated that his sentence in this case was increased over what he would have imposed in Anchorage. Instead, after stating that deterrence of others was an important factor in sentences for all drug offenses, the judge merely indicated that this sentencing goal was more likely to be effective in the community of Kenai. We think that the true issue in this case is not whether Judge Hanson discriminated in imposing sentence, but rather whether the judge correctly applied the sentencing criteria specified in *State v. Chaney,* 477 P.2d 441, 444 (Alaska 1970). We believe that he did.

Judge Hanson adequately explained his reasons for imposing Gallagher's sentence. The sentence imposed clearly reflects that Judge Hanson placed the greatest emphasis on Gallagher's rehabilitation. Only secondary importance was attributed to deterrence of others. We do not believe that, in considering this latter goal, the judge erred by taking into account the extent of need for deterrence of others in the community in which Gallagher committed his offense. Similarly, we do not think Judge Hanson erred in taking into account the probable extent to which a sentencing involving incarceration [10] would deter other potential offenders in the community in which the

sentence was imposed. Having reviewed the sentencing record, we conclude that Judge Hanson was not clearly mistaken in sentencing Gallagher.[11] *McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974).

The judgment and sentence are AFFIRMED.

---

rence of other members of the community who might be similarly inclined. In a metropolitan area, its my experience, and I've probably done more sentencings in Anchorage than I have in Kenai, that there is minimal deterrent effect from a sentence even in the more outrageous crimes for profit, such as armed robbery or burglary and so forth. The impact of what the court does in a metropolitan area seems to be minimal, even though the publicity given by the newspapers, etcetera, is considerable. My experience in ten years down here is that the impact of a sentencing in this court in this area has substantial effect.

10. Gallagher was given a three-year suspended imposition of sentence on both counts. As a special condition of probation on the count for

sale of cocaine, he was required to serve 270 days in jail; for possession of cocaine a special condition required him to serve 30 days in jail. The jail time on both charges was made concurrent.

11. We further conclude that Judge Hanson was not bound by the Sentencing Guidelines for Drug Felonies prepared by the Sentencing Guidelines Committee. These guidelines were intended to serve as a statistical source of reference, and not as a limitation on sentencing. As the Alaska Supreme Court stated in *Anderson v. State,* 621 P.2d 1345, 1346 n.3 (Alaska 1981): "The selection of an appropriate sentence . . . remains an individualized determination which must be reflective of the particular facts of a given case."