**STATE of Alaska, Appellant,**

v.

**William C. WHITE, Appellee.**

**No. A–242.**

Court of Appeals of Alaska.

Sept. 27, 1985.

Michael S. McLaughlin, Asst. Atty. Gen., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellant.

Dana Fabe, Public Defender, Anchorage, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

William C. White was arrested on April 2, 1982, and charged with first-degree robbery, AS 11.41.500(a)(1). On April 15, a grand jury returned a thirteen-count indictment against White, based on the incident which gave rise to his arrest, charging him with four counts of first-degree burglary, AS 11.46.300(a)(1); four counts of first-degree robbery, AS 11.41.500(a)(1); two counts of third-degree assault, AS 11.41.-220; one count of kidnapping, AS 11.41.-300(a)(1)(C); one count of second-degree sexual assault, AS 11.41.420; and one count of first-degree sexual assault, AS 11.41.410(a)(1). White successfully obtained an order suppressing evidence obtained through what the court found to be a defective warrant and dismissing the indictment "because illegally obtained evidence was presented to the Grand Jury." The state appealed and we vacated the order of the trial court. We remanded this case to the trial court for findings of fact and conclusions of law. On remand, the trial court issued findings of fact and conclusions of law and again suppressed the evidence seized and dismissed the indictment. The state appeals the trial court's order. We affirm in part and reverse in part.

## FACTS

At about 10:15 p.m. on April 1, 1982, a man in a ski mask with a pistol forced his way into a Valdez trailer where seventeen-year-old D.M. and her mother, P.M., lived. The intruder apparently was under the mistaken belief that there was a male inhabitant of the residence who was a dope dealer and that the trailer contained some cocaine. The M.s denied any knowledge of a dope dealer and specifically denied that any cocaine was present in their trailer. The intruder bound both M.s with duct tape and threatened to rape D.M. if she did not tell him where the drugs were. He later sexually assaulted her. He took money from her jewelry box. D.M. escaped from her bounds, obtained scissors, and stabbed the intruder's left side. They struggled over the scissors and both of their hands were cut. The intruder left approximately a half hour after first entering the trailer. D.M. regained her freedom and called the police.

D.M., despite the attacker's ski mask, was able to see some of his facial features and described him as having a fairly dark complexion with pockmarks, and wearing rose-tinted glasses. P.M. also remembered the glasses and reported that they had a shiny decoration on one lens. D.M. also stated that the man who had attacked her wore a dark leather jacket and jeans.

After the attack, two neighbors of the M.s were contacted. One told police that he had seen a tan short-bed pickup truck sitting high off the ground, with a dark stripe and a cream-colored stripe, in the neighborhood between 4:00 and 4:30 in the afternoon on the day of the incident. The other neighbor had seen the truck in the vicinity at about 4:00 p.m. and again around 10:00 p.m. that evening, though it was not there at 10:30. Another person told police that he had seen a man running in the street of the M.s' trailer park at approximately the time of the robbery.

On April 2, Valdez police were notified that a truck matching the description they had received was at the Alyeska marine terminal parking lot. Officer Mowry, who had been one of the officers responding to D.M.'s call the night before, and two other officers headed toward the terminal and stopped a truck matching the description given to them by the M.'s neighbors. The truck belonged to the appellee, William White. Officer Mowry testified to the grand jury that he noticed "some very spe-

cific characteristics of the driver as he approached the patrol vehicle that matched the description that myself and other officers had obtained from P.M. and D.M. the evening before." The police officers told White that they were stopping him because he and his car met the description given in connection with a problem at a trailer court the night before. The officers asked if they could search White's truck and he agreed. They found nothing relating to the case. White apparently told them his address and said that he had been in the M.s' trailer park the night before. He said that he had been feeling ill and had pulled in, stopped, and jogged around to clear his head. The police officers then asked him if he would be willing to go to the police department for an interview. White agreed, followed them to the station, and was interviewed there by the Valdez Chief of Police Patrick Shely.

Meanwhile, Officer Mowry went with another officer to the home of the magistrate, Phyllis Johnson, to obtain a search warrant for 21-D Kennedy Camp, William White's apartment. Officer Mowry had handwritten part of the affidavit in support of the search warrant and he continued it on tape before the magistrate. Magistrate Johnson testified that she had signed and had issued a search warrant to Officer Mowry that evening, and that it had been filled in in handwriting.

Officer Mowry, a police investigator and Chief Shely then went to White's apartment to execute the search warrant. The defendant was present at the time with an attorney who apparently had been obtained for White at his request during the earlier interview with Chief Shely. White and his attorney were told to sit at the kitchen table during the search. There is some confusion about exactly what was taken during the search, and no inventory appears on the handwritten warrant which Officer Mowry took to White's apartment. However, it is clear that at least three items were taken: pants with duct tape in the pocket, a dark waist-length jacket with a marijuana pipe in the pocket, and a pistol. During the search, Chief Shely noticed that White had a Band-Aid on his finger; White claimed he did not remember how he had cut himself. Chief Shely also asked White if he would raise his shirt and show Shely his left side. White did so, revealing a scratch mark seven or eight inches long. Officer Mowry testified that when the search was completed he left a pink copy of the search warrant on White's kitchen table.

White was arrested after the search. He was then put through a voice lineup, at which both D.M. and P.M. identified his voice as that of their assailant.

On April 6, four days after the search, Officer Mowry went to court to make a return on the search warrant before Judge Bosshard. He testified that when he went to make the return, he was directed by Judge Bosshard to make it on a typewritten copy of the search warrant. The origins and purpose of the typewritten search warrant are unclear. On this typewritten version of the warrant, Officer Mowry made an inventory of items seized during the search.

## PROCEDURAL BACKGROUND

White filed several suppression motions, including a motion to suppress all evidence seized under the warrant authorizing a search of his apartment, claiming the warrant was defective. An omnibus hearing was held before Superior Court Judge Ralph E. Moody in September 1982. Judge Moody suppressed evidence obtained through the search warrant because of discrepancies between the warrant which Officer Mowry testified he took to White's apartment on the night of the search (the handwritten warrant) and the warrant found in the court's file (the typewritten warrant), and because he found that White was not given a copy of the warrant the night of the search. Judge Moody later issued an order dismissing the indictment because illegally obtained evidence was presented to the grand jury.

In October 1982, the state appealed the trial court's suppression order and its order

dismissing the indictment.[1] This court issued an order on September 19, 1983, remanding the case for findings of fact and conclusions of law to be rendered after consideration of *Gallagher v. State*, 651 P.2d 1185, 1186–87 (Alaska App.1982).

At the hearing on remand, Judge Moody heard testimony of Officer Mowry, who had obtained and executed the search warrant, Phyllis Johnson, the magistrate who had signed it, and Police Chief Shely, who had been present when it was executed. Judge Moody then made specific findings of fact and conclusions of law invalidating the warrant and suppressing the items seized in the search and the voice lineup. He again dismissed the indictment.

## DISCUSSION

### I.

### Criminal Rule 37 Violations

Judge Moody concluded that the violations of Alaska Rule of Criminal Procedure 37 in this case were so egregious that they warranted finding the search warrant invalid under *Gallagher v. State*, 651 P.2d at 1186–87.

Criminal Rule 37(b) provides:

*Execution and Return With Inventory.* The warrant shall be executed and returned within 10 days after its date. The officer taking property under the warrant

(1) shall give to the person from whom or from whose premises the property was taken a copy of the warrant, a copy of the supporting affidavits, and receipt for the property taken, or

(2) shall leave the copies and the receipt at the place from which the property was taken.

The return shall be made promptly and shall be accompanied by a written inventory of any property taken as a result of the search pursuant to or in conjunction with the warrant. The inventory shall be made in the presence of the applicant for the warrant and the person from whose possession or premises the property was taken, if they are present, or in the presence of at least one credible person other than the applicant for the warrant or the person from whose possession or premises the property was taken, and shall be signed by the officer under the penalty of perjury pursuant to AS 09.65.012. The judge or magistrate shall upon request deliver a copy of the inventory to the person from whom or from whose premises the property was taken and to the applicant for the warrant.

▮ It is clear that the police and the magistrate did not follow the proper procedures in this case. First, the rule requires that the person whose property was taken should be given a "copy" of the warrant. In this case, Judge Moody found that White had not received a copy of the typewritten warrant—the warrant containing the inventory of property seized. Officer Mowry testified that he had left a copy of a warrant at White's apartment; yet it is obvious that, if a copy was left at the apartment, it was not of the same warrant as that which was later returned to the court. The failure of the police to leave a copy of the typewritten search warrant with White is particularly serious since it differed substantially from the handwritten warrant, a copy of which may or may not have been left with White.[2]

---

**1.** At that time, White, in addition to replying to the state's argument, filed a cross-appeal, contending that Judge Moody erred in denying several of White's other suppression motions. The cross-appeal was dismissed by this court. Judge Moody's rulings at the first omnibus hearing, which were adverse to White, were not at issue on that appeal and are not at issue in the instant appeal. In the event that White is convicted, he may raise his objections to the trial court's rulings on appeal at that time.

**2.** The two warrants differ in that the typewritten warrant in the court file includes an "X" in the box indicating that the warrant is based on an affidavit, as well as on sworn testimony, while the handwritten copy has an "X" only in the box indicating sworn testimony. The typewritten copy also has an "SW number" and a "Case number." Finally, the typewritten version has an inventory on it; the handwritten version does not.

Second, the rule requires that the officer shall give the person whose property is taken a receipt for the property taken. Here, Officer Mowry testified that he left a copy of the handwritten warrant at White's home. He also testified that he made an inventory at White's apartment. However, he went on to say that "the inventory that I made is on the typed copy." Apparently, Officer Mowry meant that he made an inventory both on the warrant left at White's apartment the night of the search and on the typewritten warrant later submitted to the court. However, no inventory appears on the copy of the handwritten warrant that was introduced into evidence. In addition, it should be noted that the inventory which appeared on the typed warrant was inaccurate because at least one seized item—a marijuana pipe in the pocket of the jacket—was never listed.

In *Gallagher v. State*, we said:

We are inclined to agree with federal authorities stating that suppression of evidence will be justified as a result of improper execution of a warrant only if the defendant was actually prejudiced or if non-compliance was intentional.

651 P.2d at 1186–87, *citing United States v. Marx*, 635 F.2d 436, 441 (5th Cir.1981). We concluded in that case that no *per se* rule of suppression should be adopted, even in cases of intentional or bad faith failure to comply with the requirements. Instead, the determination of whether to apply a suppression sanction should be made on the particular facts of each case. We noted that "compliance with the rules governing search warrants is essentially ministerial," having little impact on the rights of those affected by the search, and that remedies other than suppression are available, including exercise of the court's contempt powers. *Gallagher*, 651 P.2d at 1187.

Judge Moody found that there were intentional misstatements on the warrants in this case. He found that Magistrate John-

son did not sign the typewritten warrant on April 2, as stated; that the typewritten warrant was not left at 21–D Kennedy Camp as it reads; and that the inventory on the typed warrant was not prepared in the presence of White or of White's attorney and Chief Shely as it says. Judge Moody also found that the police had totally failed to provide any good faith reasons for noncompliance with the requirements of Criminal Rule 37.

■ These factual findings are not clearly erroneous. *See generally Van Cleve v. State*, 649 P.2d 972, 976 (Alaska App.1982). On remand, though they were given an opportunity to do so, the police and magistrate were totally unable to explain the lack of an inventory on the handwritten warrant, the existence of the typed warrant, or the inaccuracy of the inventory on the typed warrant. Magistrate Johnson testified that there was discussion in her office as to the origin of the typewritten warrant, but that she had no idea of its origin and that she did not remember when she signed the typed warrant. Chief Shely, when asked by the court if he had inquired of anyone as to how the typewritten warrant was created, testified that he had not inquired into the matter. Officer Mowry also did not know how the typewritten warrant came into existence.

■ From these facts, Judge Moody could reasonably conclude that the misstatements and omissions on the warrants were material and intentional. We therefore affirm the trial court's quashing of the warrants and suppression of the evidence seized pursuant to the warrants.[3]

We further conclude that Judge Moody's inferences of police misconduct and bad faith render it unnecessary for us to determine whether we should adopt as a rule of decision in Alaska the rule that good-faith reliance by police on invalid warrants pre-

---

**3.** We stress that suppression is an extreme sanction that should only be utilized in the most egregious cases of violation of Rule 37. In this case, Judge Moody would not have been in error in using his contempt powers to sanction the misconduct rather than suppressing evidence. However, under the circumstances, Judge Moody did not abuse his discretion in suppressing the evidence obtained through use of the warrants.

cludes suppression of the fruits of the service of the warrants. *See United States v. Leon,* —— U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). We therefore affirm Judge Moody's suppression of the fruits of the warrant.

█ Suppression of the evidence is also justified on the alternate ground found by Judge Moody, that the warrant failed to establish probable cause to search "21–D Kennedy Camp." Alaska Rule of Criminal Procedure 37(a)(1) and (2) provide, *inter alia,* that a search warrant shall issue only on a showing of probable cause established by an affidavit sworn to before a person authorized to take oaths, or on sworn testimony taken on the record. In the instant case, there is a dispute about whether the trial court properly refused to consider certain evidence which would have helped establish probable cause. The evidence in question is a statement in support of the issuance of the search warrant which Officer Mowry purportedly made to the magistrate that 21–D Kennedy Camp was White's residence.

Officer Mowry testified that, in the course of his discussion with Magistrate Johnson, he had told her that 21–D Kennedy Camp was White's address. Mowry also testified that he had believed that he had been under oath at the time he made the statement to the magistrate. However, Magistrate Johnson testified at the omnibus hearing that Officer Mowry had told her that the Kennedy Camp address was White's residence off the record. Moreover, Magistrate Johnson's affidavit states that the oath which Mowry took [only] covered "the material on the face of the affidavit as well as the continued portion of the affidavit on tape."

█ We are satisfied that under Criminal Rule 37(a)(1)(ii) Officer Mowry's off-the-record statement to Magistrate Johnson may not be considered as part of the affidavit in support of the search warrant. The affidavit consists of four handwritten paragraphs followed by the words "continued on tape," and six paragraphs transcribed from the testimony which was then recorded. Neither the written nor the taped portions of Officer Mowry's affidavit contains any express connection between White and 21–D Kennedy Camp. The "composite affidavit" cannot be supplemented by additional material which the officer later testifies that he also told the magistrate, but which does not appear of record. *See United States v. Anderson,* 453 F.2d 174, 177 (9th Cir.1971) (holding that all data necessary to show probable cause for the issuance of a search warrant must be contained within the four corners of the affidavit).

The state's reliance on *Nelson v. State,* 628 P.2d 884 (Alaska 1981), for the proposition that, under the circumstances of this case, subsequent testimony should be allowed to cure deficiencies in establishing probable cause is misplaced. There, the court considered sworn but unrecorded testimony of a police officer in support of probable cause only because the recording equipment had broken down at the hearing and because contemporaneous log notes were kept and served as a record. *Id.* at 893. Here, no record at all was made of Officer Mowry's alleged statement, even though a tape recorder was obviously available and was used for other statements by him. Therefore, we will limit our evaluation of probable cause to the affidavit and the recorded testimony under oath before the magistrate.

█ In reviewing the magistrate's determination of probable cause, we give great deference to the magistrate's decision and resolve doubtful or marginal cases by upholding the warrant. *See Rosa v. State,* 633 P.2d 1027, 1029 (Alaska App.1981).

In evaluating the sufficiency of the affidavit in support of the search warrant, Judge Moody stated in his conclusions of law that, "the only manner in which Mr. White, as described as [sic] item 5 on the tape, arguably was similar to the M.s' description was that he wore similar glasses and had a 'pug nose' and a 'swarthy complexion.' Nothing else in the information linked Mr. White to the the offense." Offi-

cer Mowry failed to state that White's vehicle matched the description of one that had been seen parked in the area near the time of the robbery. He did state that White had admitted to having been in the trailer park on the evening of the crime and also to running in the streets of the trailer park, though he failed to say that White admitted running there on that particular night. In addition, of course, neither the affidavit nor the tape made a connection between White and 21–D Kennedy Camp. Given these omissions, in addition to the state's failure to comply with Criminal Rule 37 and Judge Moody's inferences of bad faith from the explanation for those failures, we affirm Judge Moody's decision to invalidate the warrant.

## II.

### Probable Cause To Arrest

Judge Moody found that the police arrest of White was without probable cause. Essentially, he relied on statements of the police that they had not believed that they had probable cause to arrest White until after they had searched his apartment. He therefore characterized the arrest as a fruit of the search of the apartment which had to be suppressed.

In *Dunn v. State*, 653 P.2d 1071, 1077 (Alaska App.1982), we said that the United States Supreme Court's "common-sense approach to definition of probable cause has consistently been followed in decisions of the Alaska Supreme Court," and noted that "[u]nder federal law, the concept of probable cause for arrest has traditionally been construed broadly, rather than restrictively." It is the totality of factors that establish probable cause.

On the facts of this case, we are satisfied that the police had probable cause to arrest White without regard to the results of the search of his apartment. In reaching this conclusion, we reject the argument that the prior illegal search unalterably tainted the later arrest or that the police officer's statement that he would not have arrested White but for the search is controlling.

Professor LaFave states that "the mere existence of ... a prior illegal search does not inevitably taint a subsequent arrest, for it may be that the arrest will be found to have a sufficient factual basis apart from the illegal search." 3 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 11.4(e) at 646 (1978). In *United States v. Marchand*, 564 F.2d 983, 992–95 (2nd Cir. 1977), *cert. denied*, 434 U.S. 1015, 98 S.Ct. 732, 54 L.Ed.2d 760 (1978), the court considered the legality of an arrest based in part on legally obtained evidence and in part on illegally obtained evidence. The court concluded that the situation was analogous to one in which both legal and illegal evidence had been offered to obtain a search warrant, *i.e.,* the court should only look to the legally-obtained evidence to determine whether it was sufficient, standing alone, to warrant a finding of probable cause. If the legally obtained evidence was sufficient, then the arrest should be upheld despite the police reliance in part on illegally-obtained evidence. The *Marchand* court also noted that in search warrant cases, the government is not required to show that the warrant would, in fact, have been sought and issued on the basis of legally-obtained evidence alone. *Marchand*, 564 F.2d at 1002. Thus, the court concluded that the government did not have the burden of showing that the arrest would have been made even if the illegally-obtained evidence had not existed. Alaska follows the rule of *Marchand* in determining the adequacy of search warrants based on legal and illegal evidence. *See Schmid v. State*, 615 P.2d 565, 575 (Alaska 1980).

Applying this reasoning, the arrest of White following the search would be legal and its fruits admissible, if the information the officers had prior to the search (and excluding any fruit of the illegal search of White's apartment) amounted to probable cause. In making this determination, we look to all of the information the police had, and not merely the information that they put in their affidavit for the search warrant. Officer Mowry's and Chief Shely's testimony that they did not,

in fact, believe that they had probable cause is irrelevant.

■ Having reviewed the record, we are satisfied that the information in the hands of the police was sufficient to establish probable cause. The police knew that White lived at 21–D Kennedy Camp; that he drove a truck matching the description of the one seen at the trailer park shortly before the time of the crime; that he had admitted to having been in the park the evening of the crime; that he admitted to running in the streets of the Allied Trailer Park; and that a witness had seen someone running in the park at the approximate time of the crime. They also knew that White generally matched the M.s' description of the robber, including his unusual glasses. We believe that this evidence would justify a reasonably cautious person in believing that White had committed the crime against the M.s. *See Dunn v. State,* 653 P.2d at 1077. We therefore conclude that Judge Moody erred in concluding that the M.s' post-arrest voice identification of White was a "fruit of the illegal search" of White's residence rather than a result of his legal arrest.

### III.

### Sufficiency Of Evidence To Indict

■ Judge Moody dismissed the indictment because the grand jury was substantially influenced by the illegally-obtained evidence derived from the invalid warrant. We reject Judge Moody's conclusions for the same reason that we reject his conclusion that White's arrest was not supported by probable cause. In *Mohn v. State,* 584 P.2d 40, 42 n. 5 (Alaska 1978), the supreme court concluded that where inadmissible evidence is submitted to the grand jury, the indictment must be upheld if sufficient evidence exists to support the indictment absent the excluded evidence. *See also Webb v. State,* 527 P.2d 35, 36 (Alaska 1974); *Merrill v. State,* 423 P.2d 686, 697 (Alaska), *cert. denied,* 386 U.S. 1040, 87 S.Ct. 1497, 18 L.Ed.2d 607 (1967).[4]

■ The evidence illegally obtained in this case consists of White's pants with duct tape in the pocket, a dark-colored waist-length jacket, and a pistol. In addition to this evidence, the grand jury properly heard the following evidence: the M.s' voice identification of White; the testimony of D.M. describing the assailant, including his skin color and her struggle with him, as well as the injury to his hand and left side; and the testimony of P.M. and D.M. describing his very unusual glasses. The grand jury also heard the testimony of the police officers that White generally matched the M.s' description, and that

---

**4.** The United States Supreme Court has held that the fourth amendment exclusionary rule is not applicable to grand jury proceedings and that illegally-obtained evidence, therefore, may be presented to federal grand juries. *United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). The rule in Alaska is unsettled. Alaska Rule of Criminal Procedure 6(r) and A.R.E. 412 would seem to preclude use of illegally obtained evidence in grand jury proceedings. Alaska Rule of Criminal Procedure 6(r) provides:

(r) *Admissibility of Evidence.* Evidence which would be legally admissible at trial shall be admissible before the grand jury. In appropriate cases, however, witnesses may be presented to summarize admissible evidence if the admissible evidence will be available at trial. Hearsay evidence shall not be presented to the grand jury absent compelling justification for its introduction. If hearsay evidence is presented to the grand jury, the reasons for its use shall be stated on the record.

While Evidence Rule 412 provides:

*Evidence Illegally Obtained.*

Evidence illegally obtained shall not be used over proper objection by the defendant in a criminal prosecution for any purpose except:

(1) a statement illegally obtained in violation of the right to warnings under *Miranda v. Arizona,* 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694] (1966), may be used in a prosecution for perjury if the statement is relevant to the issue of guilt or innocence and if the prosecution shows that the statement was otherwise voluntary and not coerced; and

(2) other evidence illegally obtained may be admitted in a prosecution for perjury if it is relevant to issue of guilt or innocence and if the prosecution shows that the evidence was not obtained in substantial violation of rights.

Nevertheless, the Alaska Supreme Court noted the issue of the applicability of the exclusionary rule to grand jury proceedings and expressly reserved it in *Mohn,* 584 P.2d at 42 n. 4.

neighbors saw a truck similar to the one White drove parked in the trailer park the night of the robbery. In addition, as a result of White's arrest, the police were in position to see that White had a cut on his finger and a long scratch on his left side. We are satisfied that the grand jury had sufficient evidence, disregarding any illegal fruits of the search of White's apartment, to support the indictment and that Judge Moody's order dismissing the indictment was in error.

We therefore uphold Judge Moody's order invalidating the search warrant and suppressing White's pants with duct tape in the pocket, a dark-colored waist-length jacket and a pistol. We reverse Judge Moody's order dismissing the indictment and suppressing Chief Shely's observation of White's cut finger and long scratch on his left side and P.M. and D.M.'s voice identification of White.

The judgment of the superior court is AFFIRMED in part and REVERSED in part. The case is REMANDED for trial.