**STATE of Alaska, Petitioner,**

v.

**David KOEN Sr., Respondent.**

No. A–8864.

Court of Appeals of Alaska.

May 27, 2005.

11.61.127(a). Based on this report, a state trooper applied for (and obtained) a warrant to search "[the] 1st residence on [the] left of Greentimbers Drive [in] Homer, Alaska". However, the search warrant application did not explain how the house at this location was connected to the reported crime, or why the troopers believed that this house contained evidence of Koen's possession of child pornography. Superior Court Judge Harold M. Brown ruled that this omission was a fatal flaw in the warrant application, and that the evidence obtained under the warrant must be suppressed.

■ A warrant application must explain why there is reason to believe that the evidence being sought will be found at the specified premises to be searched. The warrant application in this case does not contain the required explanation. The warrant application does not identify the house on Greentimbers Drive as Koen's residence, nor does the application indicate in any other way why the troopers believed that this house contained the evidence they were seeking. In addition, even if one could infer that the troopers believed that Koen lived at the Greentimbers Drive address, the warrant application fails to explain the basis for this belief.

We therefore affirm the decision of the superior court.

W.H. Hawley Jr., Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for the Petitioner.

Kathleen A. Murphy, Assistant Public Defender, and Barbara K. Brink, Public Defender, Anchorage, for the Respondent.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

MANNHEIMER, Judge.

The Alaska State Troopers received a report that David Koen Sr. had child pornography on his computer. Possession of child pornography is a criminal offense under AS

*The content of the search warrant application*

The affidavit submitted by Trooper Ryan Browning stated that Sara McLeod came to the Homer state trooper post to report that David Koen Sr. had child pornography in his possession. McLeod told Trooper Browning that she had been at Koen's residence and had used Koen's computer to check her e-mail. While using Koen's computer, McLeod discovered that the computer contained digital photographs depicting adolescent children engaged in sexual acts.

Sara McLeod also told Trooper Browning that her husband, Michael McLeod, was a friend of Koen's. According to Sara, Koen told Michael that he had been viewing and storing child pornography on his computer.

About one hour later, Trooper Browning interviewed Michael McLeod by telephone. Michael said that, approximately one week before, he had been at Koen's residence and had seen Koen "surfing" the Internet for child pornography. Michael also said that he had seen Koen looking at child pornography on his computer.

Michael McLeod also told Trooper Browning about an earlier episode in which his wife Sara was checking her e-mail on Koen's computer—although it is difficult to tell, from Browning's affidavit, whether Michael was referring to the same incident that Sara had described. According to Michael, Sara told him that she was using Koen's computer to check her e-mail "a few weeks ago" and that, while using the computer, she opened a minimized folder and saw pornographic photographs of children. However, in contrast to Sara's description of "adolescent" children engaged in sex acts, Michael stated that Sara told him that the children depicted in the photographs were approximately one year old.

Finally, Michael McLeod told Trooper Browning that Koen had confided to him that he was sexually abusing his own adolescent daughter, and that he had videotaped an act of sexual abuse when she was eight years old.

### The search warrant

Based on the warrant application we have just described, Magistrate David Landry issued a warrant authorizing the troopers to search "the premises known as [the] 1st residence on [the] left of Greentimbers Drive [in] Homer, Alaska".

(According to the zip code look-up feature on the United States Postal Service's web site, and according to the MapQuest web site, there is no "Greentimbers Drive" in Homer, Alaska. There is, however, a street named "Green Timbers Road".[1])

### The flaw in the warrant

■ As can be seen, the warrant application makes no mention of the first residence on the left of Greentimbers Drive in Homer, Alaska. Trooper Browning's affidavit contains sufficient information to support a search for, and a search of, the computers at David Koen's residence, but the affidavit gives no information as to where that residence might be located.

Of course, one can readily infer that Trooper Browning did not pick this building at random. Potentially, Sara McLeod might have identified this location as Koen's residence when she spoke to Browning at the trooper post. Alternatively, Michael McLeod might have identified this location as Koen's residence when he spoke to Browning on the telephone later in the afternoon. A third possibility is that, following his conversations with the two McLeods, Trooper Browning consulted a telephone directory or other city directory to ascertain the location of Koen's residence.

But there are other possibilities as well. The McLeods might have told Browning that Koen, fearing a police investigation, had moved his computer out of his residence to another location—to a business office, or to the house of a friend or relative—and that this new hiding place was located on Greentimbers Drive. Or the McLeods might have told Browning that they had stolen Koen's computer to prevent him from destroying the pornographic images, and that Koen's computer was now located at *their residence* on Greentimbers Drive.

The point is that the warrant application contains no explanation of how Trooper Browning—or Magistrate Landry—concluded that the first house on the left of Greentimbers Drive was the proper place to search for evidence of Koen's crime.

The State points out that courts are to construe search warrant affidavits "in a common-sense and realistic fashion",[2] and that a

**1.** See *http://zip4.usps. com/zip4/welcome.jsp* and *http://www.mapquest. com/maps/main.adp* (both last visited on May 4, 2005).

**2.** *State v. Davenport,* 510 P.2d 78, 82 n. 8 (Alaska 1973), quoting *United States v. Ventresca,* 380

U.S. 102, 108, 85 S.Ct. 741, 745, 13 L.Ed.2d 684 (1965).

court must read the affidavit as a whole, rather than parsing it into isolated "bits and pieces of information".[3] The State asserts that, reading the affidavit in this case as a whole, it is reasonable to infer (1) that Trooper Browning must have thought that the house on Greentimbers Drive was Koen's residence, and (2) that Browning must have had a good reason for thinking so—either because one or both of the McLeods told him, or because his own independent investigation revealed that this was where Koen lived.

We agree with the State that these are reasonable inferences. But this does not mean that the affidavit is legally sufficient to support the warrant. Magistrate Landry might well have inferred that Browning had some good reason to believe that the house on Greentimbers Drive was Koen's residence, but the Constitution required Browning to explain this reason—so that Magistrate Landry could independently evaluate it.

■ Even though Trooper Browning may have had a valid and adequate reason to believe that the house on Greentimbers Drive was Koen's residence (and that, therefore, the child pornography images would be found there), the law requires that the factual basis for his belief be set forth in the warrant application itself. As the United States Supreme Court stated in *Whiteley v. Warden, Wyoming State Penitentiary*, "[An] insufficient affidavit cannot be rehabilitated by testimony concerning information possessed by the [officer] when he sought the warrant but not disclosed to the issuing magistrate."[4]

We applied this constitutional principle in *State v. White*, 707 P.2d 271 (Alaska App. 1985). The defendant in *White* was suspected of burglarizing a residence, stealing money from inside the house, and sexually assaulting one of the occupants.[5] The police applied for a warrant to search White's apartment—Apartment 21–D, Kennedy Camp—for evidence of these crimes. Even though this Court concluded that the police had probable cause to arrest White for these crimes at the time they applied for this warrant,[6] we nevertheless invalidated the warrant because the testimony given in support of the warrant application did not contain an explanation of why the police identified "21–D Kennedy Camp" as the place to be searched.

We acknowledged that the police had good reason for naming that apartment as the place to be searched. The record showed that, earlier, the police had interviewed White, and he had told them his address.[7] Moreover, the officer who applied for the warrant actually informed the magistrate that "21–D Kennedy Camp" was the place where White lived. The trouble was that this conversation occurred off-record; the officer never repeated this statement while he was under oath, giving testimony in support of the warrant.[8]

We held that the warrant application could not be supplemented by statements that the officer made off-record.[9] And, because the only assertion of a connection between White and the apartment at 21–D Kennedy Camp occurred off-record, we invalidated the warrant.[10]

In some respects, the facts of *White* might be considered more favorable to the State than the facts of Koen's case. In *White*, the police officer at least explained to the magistrate why they wished to search the identified premises (albeit in an off-record conversation). In Koen's case, on the other hand, the magistrate was left to speculate that the house on Greentimbers Drive must be Koen's residence, and then to speculate as to the trooper's basis for identifying this house as Koen's residence.

3. *Massachusetts v. Upton*, 466 U.S. 727, 732, 104 S.Ct. 2085, 2088, 80 L.Ed.2d 721 (1984).

4. 401 U.S. 560, 565 n. 8, 91 S.Ct. 1031, 1035 n. 8, 28 L.Ed.2d 306 (1971).

5. *White*, 707 P.2d at 273.

6. *Id.* at 278–79.

7. *Id.* at 274.

8. *Id.* at 277.

9. *Id.*

10. *Id.*

■ Even though search warrant applications are to be evaluated in a common-sense manner, a warrant application must explain how the police identified the named premises as a location where the sought-for evidence was likely to be found. We are not alone in construing the Fourth Amendment to require this level of particularity.

In *United States v. Hove*,[11] the police suspected that Kimberly Hove was sending threatening letters to her former husband. These letters were composed by cutting words out of magazines and then pasting them on paper, but the envelopes in which the letters were sent were typed on a typewriter, and the typewriter had malfunctioning keys.[12] The police applied for a search warrant for Hove's residence, setting out reasons why they suspected that Hove was the author of the threatening letters. But the warrant application never asserted a connection between Hove and the premises that the police proposed to search.[13] The Ninth Circuit concluded that this was a fatal defect in the warrant.[14] In fact, the Ninth Circuit held that this defect was so blatant that the government could not rely on the "good faith" exception to uphold the search.[15]

Similarly, in *Braxton v. State*,[16] the affidavit in support of the search warrant set forth probable cause to believe that the defendant had committed a robbery, and the affidavit further asserted that people who commit armed robberies commonly store the fruits of the robbery, and the weapons used in the robbery, in their homes.[17] The warrant application named the premises at 4310 Seminole Avenue, Apartment 203, as the place to be searched.[18]

A detective had obtained the Seminole Avenue address by checking the defendant's arrest record for his home address.[19] But the search warrant affidavit failed to explain this. In fact, the affidavit failed even to assert that the apartment on Seminole Avenue *was* the defendant's residence, much less explain *why* the police believed that this was the defendant's residence.[20]

The Maryland Court of Special Appeals held that this was a fatal flaw in the search warrant application:

> In construing the affidavit here, the issuing judge first had to infer that the targeted premises was [the defendant's] residence, based on the street address on the face of the affidavit, coupled with the general assertion that criminals typically store fruits and instrumentalities of crime in their residences. Yet the affidavit contained absolutely no clue as to *why* the police believed [that the defendant] lived at the particular location identified in the affidavit and warrant application; [and] the affidavit failed to provide a factual basis for the claim that the targeted premises was the suspect's residence....
>
> [W]e hold that the mere identification in the affidavit of [the defendant's] address, without even a single predicate fact showing the basis for the belief that [the defendant] resided at that address, did not establish probable cause to search that location. This is so even if there was otherwise every reason to believe that [the defendant] committed the armed robbery and harbored the fruits and instrumentalities wherever he may have lived.

*Braxton*, 720 A.2d at 42.

Four years later, in *Oesby v. State*,[21] the Maryland court struck down another search warrant for the same reason. The search warrant application in *Oesby* established probable cause to believe that the defendant had committed a sexual assault, and that evidence of this crime would be located at his

11. 848 F.2d 137 (9th Cir.1988).

12. *Hove*, 848 F.2d at 138.

13. *Id.* at 139.

14. *Id.* at 139–140.

15. *Id.*

16. 123 Md.App. 599, 720 A.2d 27 (Md.App.1998).

17. *Braxton*, 720 A.2d at 33.

18. *Id.*

19. *Id.* at 31.

20. *Id.* at 33.

21. 142 Md.App. 144, 788 A.2d 662 (2002).

residence. But the warrant application did not assert or explain the connection between the defendant and the specified premises to be searched.[22]

In *State v. Varnado*,[23] the Louisiana Supreme Court likewise ruled that a search warrant was invalid because the warrant application failed to explain the connection between the specified premises to be searched and the crime being investigated.

The search warrant application in *Varnado* set forth probable cause to believe that the defendant had committed rape and robbery, and the warrant application named 2220 Delery Street as the premises to be searched. The police had obtained that address from the defendant at the time of his arrest, but the warrant application failed to explain this.[24]

The Louisiana court acknowledged that, given the particular offenses alleged in the search warrant application, it would be reasonable to infer that evidence of these crimes would be found at the defendant's residence, and thus "[t]he police ... had probable cause in this case to search the defendant's residence".[25] The court concluded, however, that the police "made a critical omission in the warrant application by failing to identify the targeted premises as the defendant's residence."[26]

In *People v. Gall*,[27] the police applied for a warrant to search the defendant's apartment. The affidavit in support of the warrant clearly identified the address of the apartment to be searched, and the affidavit also clearly asserted that this apartment was the defendant's residence, but the affidavit did not explain the *basis* for the assertion that the identified apartment was the defendant's residence.[28] Because the affidavit was silent regarding this "link in the chain of inferences

required for probable cause to search [that] particular apartment", the Colorado Supreme Court concluded that the affidavit probably "failed to provide a substantial basis" for the magistrate's issuance of the warrant.[29] However, the Colorado court upheld the admissibility of the resulting evidence under the good faith exception recognized in *United States v. Leon*.[30]

See also *United States v. Procopio*,[31] where the First Circuit suggested that a warrant application to search a suspect's residence is defective if "nothing in the affidavit establishe[s] probable cause to believe that [the suspect] live[s] there".[32] (The court did not resolve this issue because the court concluded that, even if this omission was a fatal defect, the warrant was saved by the *Leon* good faith exception.)

Based on these cases—our own decision in *White*, plus the decisions from other jurisdictions that we have just discussed—we conclude that the search warrant application in Koen's case was defective. The warrant application did not identify the house on Greentimbers Drive as Koen's residence, nor did it otherwise explain any connection between the Greentimbers Drive premises and the evidence being sought. Moreover, even if one could infer that the trooper who applied for the warrant believed that the house on Greentimbers Drive was Koen's residence, the warrant application does not explain the basis for the trooper's belief. Because of this, the warrant application was not sufficient to support a warrant for a search of the house located on Greentimbers Drive.

As we mentioned in passing above, the United States Supreme Court has ruled that when police officers act in good-faith and reasonable reliance on a seemingly valid search warrant, the evidence obtained under

22. *Oesby*, 788 A.2d at 665–67.

23. 675 So.2d 268 (La.1996).

24. *Varnado*, 675 So.2d at 269.

25. *Id.* at 270.

26. *Id.*

27. 30 P.3d 145 (Colo.2001).

28. *Gall*, 30 P.3d at 151.

29. *Id.*

30. 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

31. 88 F.3d 21 (1st Cir.1996).

32. *Procopio*, 88 F.3d at 28.

that warrant will be admissible even though the warrant ultimately proves to be invalid. *United States v. Leon,* 468 U.S. 897, 913, 922, 104 S.Ct. 3405, 3415, 3420, 82 L.Ed.2d 677 (1984). However, we have not yet decided whether to adopt a similar rule as a matter of state law.[33] Moreover, the State does not assert the good-faith exception in Koen's case.

*Conclusion*

The judgement of the superior court is AFFIRMED.

COATS, Chief Judge, dissenting.

The facts of this case are simple. Sarah McLeod and Michael McLeod were friends of the defendant David Koen. They both had been in David Koen's house and observed that he had child pornography on his computer. Koen had told Michael McLeod that he had been viewing and storing child pornography on his personal computer and that he had been sexually molesting his 13–year–old daughter. He had recorded a video of the molestation when his daughter was 8 years old.

Trooper Ryan Browning put this information in an affidavit in support of the search warrant. In the affidavit, Trooper Browning stated that he had reason to believe that evidence of child pornography was located on personal computers and video tapes at the first residence on the left of Greentimbers Drive at Homer, Alaska.

The alleged defect in the warrant is that the warrant does not indicate why Trooper Browning believed that the evidence would be at the Greentimbers Drive address. The United States Supreme Court and the Alaska Supreme Court have both stated that affidavits submitted in support of the search warrant should be read as a whole and tested and interpreted "in a common sense and realistic fashion." [1] Courts are encouraged to review warrants charitably to encourage police officers to obtain a warrant.[2] And we are to give the magistrate's determination that probable cause exists "great deference." [3]

Applying these standards, it is apparent that the Greentimbers Drive address is Koen's residence where the McLeods saw the child pornography. The McLeods reported that they saw the evidence of the child pornography at Koen's residence. In the affidavit, Trooper Browning swears that he believes that evidence of child pornography is on personal computers and video tapes at the Greentimbers Drive address. Looking at the warrant in a common sense manner, it is apparent that the trooper is asking to search Koen's residence where the McLeods reported seeing the child pornography.

The short time Trooper Browning used to obtain the warrant reinforces the inference that the evidence of the child pornography was present at Koen's residence at Greentimbers Drive, rather than some other place. Trooper Browning obtained the information about the child pornography on Koen's computer and obtained the warrant and served it within a few hours on the same day. Sarah McLeod contacted Trooper Browning at 4:47 p.m. on February 27, 2004. The trooper interviewed Michael McLeod at 5:43 p.m. that same day. The magistrate issued the warrant at 6:30 p.m. Trooper Browning served the warrant at Koen's residence at 7:30 p.m.

The next question is how did Trooper Browning obtain the Greentimbers Drive address. It is obvious that the McLeods were intimately familiar with this residence. They were friends of Koen and had recently been in the residence where they saw the child pornography. It is logical to conclude that Trooper Browning was not going to search the wrong place. He could obtain from the

---

**33.** *See State v. White,* 707 P.2d at 276–77.

**1.** *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965); *State v. Malkin,* 722 P.2d 943, 947 n. 10 (Alaska 1986); *State v. Davenport,* 510 P.2d 78, 82 n. 8 (Alaska 1973); *Rosa v. State,* 633 P.2d 1027, 1030 (Alaska App.1981).

**2.** *Illinois v. Gates,* 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983).

**3.** *Ventresca,* 380 U.S. at 109, 85 S.Ct. at 747.

McLeods the location of where they had observed the pornography. All of this is apparent from the face of the warrant. These are all reasonable and common sense inferences which the magistrate could make. To refuse to allow the magistrate to make these common sense inferences appears to me to violate the case law which requires us to evaluate warrants in a common sense and reasonable manner.

In reaching a different conclusion, the majority relies on our former case, *State v. White.*[4] But *White* is easily distinguishable. White was accused of various counts of burglary, robbery, kidnapping, and sexual assault.[5] In order to search for evidence of these offenses the police asked for a warrant to search "21–D Kennedy Camp."[6] But the police never set out any reason in the warrant to connect 21–D Kennedy Camp to White or to the offense.

There was evidence, off the record, that one of the police officers had told the magistrate that 21–D Kennedy Camp was White's address. (There is no indication that the police told the magistrate why they suspected that White lived at that address.) We affirmed the trial judge's decision invalidating the warrant on several grounds. We upheld the trial judge's conclusion that the police had made misstatements and omissions on the warrants which were material and intentional. We found that the trial judge's inference of police misconduct and bad faith made it unnecessary to decide whether to uphold the warrant under the good faith exception set out in *United States v. Leon.*[7] We also noted, with apparent approval, the trial judge's decision that the information which the police presented in the

warrant was insufficient to connect White to the offense.[8]

The warrant in *White* was so flawed that it is difficult to compare it to the present case. But *White* can be cited for the proposition that all of the information necessary to show probable cause to issue a search warrant must be contained within the information officially presented to the magistrate. And, if the process of obtaining the warrant is as flawed as it was in *White,* we will not apply the *Leon* good faith test.

But Koen's case is very different. As I have tried to illustrate, I do not believe that it is necessary to go beyond the actual information which was presented to the magistrate to understand that Trooper Browning was asking to search Koen's residence where the McLeods had seen the child pornography on the computer. And it was obvious from the face of the affidavit, that he knew the address of Koen's residence where the evidence was located.

The majority relies on several cases which are distinguishable from Koen's case.[9] In all of these cases, the police had probable cause to believe that the defendant committed a crime. The affidavit then states that the police have reason to believe that evidence of the crime would be found at a particular address. The defect in the affidavit is that it does not establish any connection between the defendant and the place to be searched. Even in these cases, all of the courts except one[10] allow the police to establish that they acted in good faith under the doctrine set out in *United States v. Leon.*[11]

Koen's case would be similar to these cases if the police set out probable cause to believe that Koen committed a crime, such as robbery. And the police had asked to search

---

**4.** 707 P.2d 271 (Alaska App.1985).

**5.** *Id.* at 273.

**6.** *Id.* at 277.

**7.** 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

**8.** *White,* 707 P.2d at 277–78.

**9.** *United States v. Procopio,* 88 F.3d 21 (1st Cir. 1996); *United States v. Hove,* 848 F.2d 137 (9th Cir.1988); *People v. Gall,* 30 P.3d 145 (Colo.

2001); *Oesby v. State,* 142 Md.App. 144, 788 A.2d 662 (2002); *Braxton v. State,* 123 Md.App. 599, 720 A.2d 27 (1998); *State v. Varnado,* 675 So.2d 268 (La.1996).

**10.** *United States v. Hove,* 848 F.2d 137 (9th Cir. 1988).

**11.** 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

the Greentimbers Drive address without stating what the connection was between the address and the crime or Koen. The first weakness in the affidavit would be that it did not set any connection between Koen and the Greentimbers Drive address. The more important defect is that the affidavit would not set out how the police determined that the Greentimbers Drive address was Koen's residence. In cases where the police have probable cause to believe that a defendant has committed a crime, determining where the defendant resides can be a problem. Many people do not have residences that can easily be determined. And, if the police searched the wrong residence, someone's right to privacy would be seriously violated. However, none of these factors are present in Koen's case.

The McLeods knew that Koen possessed child pornography at Koen's residence because they were in the residence when they saw the evidence. It appears clear to me that the police knew the location of the residence because the McLeods communicated this information to them. They were simply going to search the residence where the McLeods had seen the evidence. Koen's case is simply not like the cases relied on by the majority, where the police have probable cause to believe that the defendant committed a crime and then state a particular place that they want to search without making any connection between the defendant and the place to be searched. And even in those cases, where the defects in the warrant appear to be much more egregious, the courts have not suppressed the evidence, but allowed the police to establish that they acted in good faith under *United States v. Leon.*

I conclude that it was reasonable for the magistrate to determine that the affidavit in support of the search warrant set out probable cause to believe that evidence of child pornography would be found at the Greentimbers Drive residence. I accordingly dissent from the majority decision suppressing the evidence which was seized from Koen's residence.